THE STATE ex rel. DAVID T. PUNCH et al. v. HENRY KORTJOHN et al., Election Commissioners of St. Louis.

**In Banc, November 26, 1912.**

1. **NOMINATIONS: By Petition of Electors: New Parties.** The election laws of this State leave open the door for the formation of new parties by any considerable portion of the electorate. Under Sec. 5833, R. S. 1909, electors may choose a party name, and by a petition designate such name and their candidates, and have those names printed on tickets under that party name. The Act of 1909, being Sec. 5855, R. S. 1909, declaring that "hereafter all candidates for elective offices shall be nominated by a primary election held in accordance with this article," relates to nominations by a primary election, and was meant to put a stop to nominations by conventions, and was not intended, in the case of a new party, to prevent the nomination of candidates by petition signed by the requisite number of electors, as provided by said section 5833. Nor was said section 5855 intended to prevent the naming of an independent nonpartisan candidate by petition of electors.

2. ——: **By Conventions.** Candidates for Representative are not entitled to have their names placed upon the official ballots to be used at the general election in November, by reason of the fact that they were nominated, by a convention of delegates of their party, although such party has sprung into existence since the last general election. The very purpose of Sec. 5855, R. S. 1909, enacted in 1909, was to eliminate from the existing laws that portion thereof which authorized a party nomination by a convention of delegates.

3. ——: **By Committee: New Party.** Under Sec. 5870, R. S. 1909, declaring that "vacancies occurring after the holding of any primary, or when no person shall offer himself as a candidate before such primary, shall be filled by the party com-

mittee," the political committee of a party organized prior to the date fixed by the statute for holding the primary election, but after the time for taking the preliminary steps for said primary had expired, for instance, not until after the time fixed by the statutes for filing declarations of candidacies, has power to name their party candidates for offices, and such candidates are entitled to have their names placed upon the official ballots of said new party to be used at the ensuing general election.

4. ———: ———: ———: **No Party Committee.** Said section 5870 is broad enough to permit a party committee of any new nation-wide party to fill any vacancy on the party ticket; nor is its right to fill such vacancies to be denied by election commissioners on the ground that the committee was not chosen in the manner prescribed by the statutes; for, if it consists of committeemen actually performing duties prescribed by law and claiming to act authoritatively for an actual party, it is a *de facto* committee, whether or not a *de jure* one, and its acts, even if an usurpation of authority, cannot be called in question by a board of election commissioners in a collateral proceeding, such as an application of the candidates named by the committee to have their names placed on the official ballots.

5. ———: ———: ———: **Necessity for Party Committee.** The law does not prevent the organization of a new party, and a party organized after the time for taking the preliminary steps for the general primary had expired, must in its own way choose a committee to act for it, and that committee has power to name candidates where none could be named at the primary. The statutes prescribing the methods of nominating party candidates for office and the choosing of party committees are statutes of regulation and not statutes of prohibition.

Mandamus.

WRIT ALLOWED.

*Joseph A. Wright, Ford W. Thompson, Henry H. Oberschelp, Albert Chandler* and *Paul V. Janis* for relators.

*Lambert E. Walther* for respondents.

GRAVES, J.—Relators Punch and Wilson are members of the "Progressive Party," a political organization born since the Republican National Con-

vention in June, 1912. Of matters of current public history we can take judicial notice. Respondents are the members of the board of election commissioners of the city of St. Louis. By three several routes the relators sought to have the respondents place their names upon the official ballots to be used in the general election of November 5, 1912. The office to which they aspire is State Representative from the Sixth district in the city of St. Louis. They presented to respondents (1) a petition duly signed and executed by the required number of qualified voters in their district; (2) a certificate of nomination to such office by a convention of said party in said district; and (3) a certificate of nomination by the committee of such party in said district. Notwithstanding the fact that they knocked at these three several doors, the respondents, as a body, were in doubt as to whether either should be opened, and by a vote of two and two, all were thereby left closed, and relators denied a place upon the official ballots. Relators being not content with this ruling, application was made to this court invoking our writ of mandamus to compel the respondents, through one door or the other, or all, to place their names upon such ballots. Being willing that the matters might be heard, our alternative writ was issued, to which return was made by respondents Blodgett and Kortjohn in the form of a demurrer. Respondents Jamison and Spencer filed a separate return in which they admit the facts stated by relators, and say that they voted to receive relators' petition and other evidence of nomination and to place their names upon the official ballot, and that they are still willing that the same be done. To their return is attached a certified copy of the record of proceedings before the board of election commissioners which shows that they acted as in their return stated. In this state of the record the question becomes one purely of law, and must be disposed of as such. Facts thus admitted by the respective returns will be

noted under the proper point in the course of the opinion.

I.   The questions presented compel a thorough view of our primary laws as well as some previous laws as to nominations.   Respondents Kortjohn and Blodgett contend that under our Primary Act of 1909, no person can be a candidate for any office of the character here involved and have his name on the official ballot, unless such person is nominated at the biennial primary, for the year in which he expects to run for such office.   Of course they make no such claim as to offices especially excepted in this Primary Act of 1909, nor to persons nominated to fill vacancies after such primary, but as to an office of the class to which the office here in question belongs, such is their contention. They argue that the Act of 1909 operated to repeal other methods of nominating candidates for public office.   To this contention we do not fully agree.

Respondents (and when we use the term respondents here we refer to respondents Kortjohn and Blodgett) rely upon section 5855, Revised Statutes 1909, which reads:

"Hereafter all candidates for elective offices shall be nominated by a primary election held in accordance with this article.   This article shall not apply to special elections to fill vacancies, nor to county superintendents of schools, to city officers not elected at a general state election, to town, village, or school district officers."

This section comes to the body of our laws from the Act of 1909.   [Laws 1909, p. 481.]   In 1889 (Laws 1889, p. 105) under the head of elections, there was passed an act entitled, "An Act to provide for the printing and distributing of the ballots in elections for public officers at public expense, and to regulate elections of public officers," the second section of which reads:

"Sec. 2. Any convention of delegates or primary election as hereinafter defined, held for the purpose of making nominations to public office, and also electors to the number hereinafter specified, may nominate candidates for public offices to be filled by election within the state. Such nomination shall be made by filing a certificate of nomination, executed with the formalities prescribed for the execution of an instrument affecting real estate."

This section has remained upon the statute books ever since and is now Sec. 5833, R. S. 1909. When passed in 1889, this section was the one which defined and pointed out the sources of nominations. They were three in number, i. e., (1) a convention of delegates, (2) a primary election, and (3) a petition by electors. In the early case of Atkeson v. Lay, 115 Mo. 538, this court held that such electors might designate a party name, and under that name have their candidates' names printed. Thus the door was opened for the formation of a new party by any considerable portion of the electorate of the State. This remained the fixed policy of the law until 1909, and is the fixed policy of the law now, unless such policy has been changed by the Act of 1909 or previous intervening acts. In determining the legislative intent it is proper to consider the public history of the times. It will be noted that in this Act of 1889 the primary system is recognized as one of the methods of naming candidates. About that time and even prior thereto public sentiment was divided as to the better method of making party nominations. The convention system had its advocates and the primary system had its advocates. As between the two the fight proceeded, but from neither side was there evinced a disposition to bar any independent candidates named by the electors or the formation of new parties by the electorate of the State. The absorbing topic was, shall the convention system survive, or shall it be displaced entirely

by the primary system? Our political and legislative
history bespeak these facts. The whole fire was cen-
tered upon this matter in so far as party nominations
are concerned. There was no public thought of pre-
venting the formation of new parties, nor of prevent-
ing an individual, backed by a required quota of elec-
tors from running upon a ticket to himself. So that
we say that all the legislative acts following the Act of
1889 must be construed with reference to the spirit of
the times surrounding them. The matter thus discussed
was the method to be used by *political parties* in mak-
ing their nominations. The Act of 1889 recognized two
methods for existing political parties to make their
nominations, to-wit, by a convention of delegates or
by a party primary. It also recognized a method for
a new party ticket and for an independent or nonpar-
tisan ticket, as we construed it in Atkeson v. Lay, su-
pra. Although there was more or less a continuous
fight from 1889 on, for the selection of candidates by
party primaries rather than by party conventions, ma-
terial legislative results did not come to light until
the legislative session of 1907, at which time a bill was
passed entitled, "An Act to provide for party nomi-
nations by direct vote." [Laws 1907, p. 263.] The
first section of that act is the same as the first section
of the succeeding Act of 1909, and is now Sec. 5855,
R. S. 1909, upon which respondents rely.

A careful reading of the Act of 1907 shows that
the legislative mind was bent upon the method of nom-
inations by political parties and had no thought of dis-
turbing the Act of 1889 so far as it related to nom-
inations by electors, which portion of the Act of 1889
we had, in Atkeson v. Lay, so construed as to make
it the avenue for the formation of new political organ-
izations, as well as the avenue for independent, non-
partisan nominations. Indeed, the very title of the
Act of 1907 would indicate that there was no legisla-
tive intent to disturb that portion of the Act of 1889

relating to nominations by electors. The Act of 1907 was repealed by the Act of 1909 (Laws 1909, p. 481); the title to said act reading thus: "An Act to repeal an act entitled, 'An act to provide for party nominations by direct vote,' approved March 18, 1907, and to enact in lieu thereof a new act covering the same subject."

The Act of 1909 re-enacts most of the salient features of the old act, and in places elaborates and makes the provisions clearer, but a careful reading of the Act of 1909 shows, as its title indicates, that it in fact was dealing with the method of making party nominations and not especially with other matters covered by the original Act of 1889. The repealing section of the Act of 1909 reads: "That an act entitled, 'An act to provide for party nominations by direct vote,' approved March 18, 1907, Session Acts 1907, page 263, together with all other acts or parts of acts inconsistent or in conflict with the provisions of this act, be and the same are hereby repealed."

In other words, this Act of 1909 does not attempt to deal with the subject of nominations made by electors, and is therefore not inconsistent with that portion of the Act of 1889, and of course does not repeal that portion of such act. To my mind both the Act of 1907 and the Act of 1909 were only intended to eliminate from the Act of 1889 that portion which authorized a party nomination by a convention of delegates. That was the question politically and legislatively discussed during those years, and that is the evil the new laws were intended to remedy. There was no intent to take from the electorate of the State the right to designate a new party name and candidates on such ticket by a petition of electors, or to prevent the naming of an independent, nonpartisan candidate by such electorate. As said before the legislative purpose was, using a slang phrase, to "kill off" political conventions for nominating purposes and not to prevent the

organization of new parties through the joint action of qualified electors. So that it is clear to my mind that relators' names should go on the Progressive ticket by reason of the petition to that effect by the electors of their respective district.

II.  By the same reasoning it is clear that they are not entitled to go thereon by reason of the nominating certificate from the Progressive party convention. As said before the very purpose of all legislation subsequent to the Act of 1889 was to do away with nominations by conventions. Such legislation to my mind had no other purpose except in addition to perfect a system of conducting party primaries. As to this method, relators' contention must fail.

III.  Lastly we take the nomination made by the Progressive party committee. In our judgment relators were entitled to a place on the official ballots by reason of this act of the party committee. There may be more obstacles in the way of reaching this conclusion, but in my way of thinking the conclusion is well grounded in legal principles. We have here a political party, nation-wide, organized after the time for taking the preliminary steps for the August primary had expired. Such party, therefore, could not participate in the primary, although it came into existence prior to the primary. The preliminary steps had to be taken prior to June 6, 1912, at which time there was no such political organization, but it did have a national and state organization prior to August 6, the date of the primary. Such party although actually in existence had no candidates for office running at such primary. In the Act of 1909 (Sec. 16, Laws 1909, p. 485), it is provided: "Vacancies occurring after the holding of any primary or where no person shall offer himself as a candidate before such primary, shall be filled by the party committee of the district, county or

State, as the case may be: *Provided, however,* that no name shall be allowed on any ticket until the required fee shall have been paid.''

This section is broad enough to permit the party committee of such party to fill any and all vacancies upon their party ticket. But it was urged that there was no party committee elected in the manner provided by law. In my judgment there are two answers to this question. First, there was a party committee *de facto,* whether there was one *de jure* or not. Call it merely a political committee *de facto,* yet when we have committeemen and a committee actually performing the duties prescribed by law and claiming to act for the party by authority, with a duly organized political party as we have here, can the election commissioners in a matter of this kind question the authority of the body to act? We think not. If, under the law, they are usurping authority, the law affords a remedy, but their acts cannot be called into question in a collateral proceeding as was this before the board of election commissioners. They purported to be a political committee for an existing party, and that board is not empowered to hear and determine the rights of committeemen or a committee to act.

But we need not rest the case upon this ground alone. There is nothing to be found in the statute laws of Missouri preventing the organization of a new political party at any time the electors of the State see fit to so organize and declare principles. It may be true that we have made no express provision for an emergency of this kind, but it is equally true that from a legislative standpoint we have not placed a ban upon the organization of a new party, and personally I do not think we could place such a ban without treading dangerously near the constitutional inhibitions. We may regulate political parties after their organization in the exercise of the police power of the State, but

that and no other power can suppress the alignment of our citizens with either old or new parties.

. For such new organization there must be a starting point, and because the law makes no express provision for the starting point, it does not follow that the citizens believing in given principles cannot meet and organize in the old and accustomed ways, but when organized they must follow the regulations as prescribed by law. The committee of the Progressive party could not have been selected at the August primary, and no doubt was selected by electors belonging to that party in the old way. This we think sufficient. Had there been a party organization in time for the August primary, committeemen should have been selected thereat. But even then there would have had to have been a provisional committee previously selected in some manner to have enabled candidates on such ticket to have taken the preliminary steps in that primary. It is hard to conceive how a new political party can be organized except we concede the right to have a provisional committee to run the affairs of the party up to such time as it can elect a committee under the statutes.

Political committees are the head and front of political organizations. They are the managing and guiding officers. In fact there can be no organization without officers, and if our laws contemplate that new political parties may be formed, as we think they do, then such laws must contemplate that, when such new political organization is perfected, it will designate the usual managing officers and committees, which will act until such time as officers and committees may be elected under regular statutes. We should always bear in mind that our statutes in this regard are statutes of regulation and not statutes of prohibition. For these two reasons we are of opinion that relators were entitled to go upon the official ballot under their nomination by the committee of the Progressive party.

Cases from other States shed but little light upon the questions. They are largely dependent upon general principles applied to the statutes of our own State. For these reasons we are satisfied with our judgment heretofore announced by this tribunal, but for want of time announced without opinion filed. Later the case was assigned to me for an opinion.

The respondents were in error in refusing to place the names of relators upon the official ballots and our order heretofore made for a writ of mandamus compelling them to place such names upon the official ballot was right.

All concur except *Kennish, J.*, not sitting.