STATE ex rel. JOHN R. DAVIS and WILLIAM F. GLYNN, Relators, v. JOHN B. EDWARDS, ALEXANDER H. ROBBINS, JAMES Y. PLAYER, and JOHN H. HOLLIDAY, constituting the BOARD OF ELECTION COMMISSIONERS OF THE CITY OF ST. LOUIS, Respondents.

St. Louis Court of Appeals. Opinion Filed March 8, 1921.

1. **ELECTIONS:** Primary Elections: Nominations: Candidates for Members of Board of Education of City of St. Louis: Nominating by Conventions Abolished. By the general primary law and the

State ex rel. v. Edwards et al.

Act of 1919 (Laws 1919, p. 328) the Legislature abolished entirely the nomination of candidates for public office by nominating conventions, and, though prior to 1919, section 5833, Revised Statutes 1909, appeared to give authority for the nomination of candidates for the board of education of the City of St. Louis by the convention system—since such nomination could not be made by direct primary—such authority, if any, has been taken away by the Act of 1919, repealing said section and enacting in lieu thereof a new section (4802, Revised Statutes 1919), which omits all reference to a "convention of delegates;" therefore the board of election commissioners were without authority to call a primary election for choosing delegates to party conventions for the purpose of nominating candidates for the board of education of the City of St. Louis.

2. ———: ———: ———: ———: May be Nominated by Petition of Electors. On the other hand, the right to make such nominations "by certificates of nomination," or petitions signed by the required number of electors, as is done in school elections generally throughout the State, cannot be doubted.

3. MANDAMUS: Awarding Peremptory Writ: Clear Legal Right to Performance of Duty Enjoined by Law Must Appear. To entitle relators to a permanent writ of mandamus, it must be made to appear that they have a clear legal right to the performance by respondents of a duty enjoined upon the latter by law.

Mandamus Original Proceeding.

ALTERNATIVE WRIT QUASHED.

*Connett & Currie* for relators.

*Charles H. Danes* and *H. A. Hamilton* for respondents.

PER CURIAM:—This is an original proceeding whereby the relators seek a peremptory writ of mandamus directed to the respondents, constituting the Board of Election Commissioners of the City of St. Louis, to compel respondents to give notice of, call, hold and supervise a primary election in the City of St. Louis, for the purpose of selecting delegates to a convention of the Republican party and of the Democratic party in said city, for the purpose of nominating candidates for members of the Board of Education of said city to be voted upon at the election to be held therein on April 5, 1921.

206 M. A.—32

Upon application by relators on March 8, 1921, one of the judges of this court issued an alternative writ of mandamus directed to respondents, returnable March 11, 1921, commanding them to give notice of, call, hold and supervise a primary election in said city for the purposes aforesaid, or to show cause at the return day why they should not do so. On the return day, return to the alternative writ was duly made by respondents; whereupon, on said day, the cause was transferred into court. Relators thereupon, forthwith, filed a motion for judgment on the pleadings, and the cause was argued and submitted.

The alternative writ, the first pleading in mandamus, following the averments of the application therefor, sets up that the respondents constitute the Board of Election Commissioners of the City of St. Louis; that the relators are legally qualified voters and electors of said city, relator Davis being a member of the Republican party of said city, and relator Glynn a member of the Democratic party therein; that the said political parties each cast at least one-fourth of the total vote cast at the next preceding election held for the purpose of nominating candidates for public office, and have managing or controlling committees known respectively as the Republican City Central Committee and the Democratic City Central Committee; that the territory within the corporate limits of said city is by law a school district, governed by a Board of Education composed of twelve tax paying residents therein, who are selected for a term of six years, and that the terms of office of five members of said Board now holding office are about to expire, and that these five places on said Board are to be filled at the next election to be held according to law in said city on April 5, 1921.

The alternative writ further charges that under the law it became the duty of the managing and controlling committee of each of said political parties to notify respondents to cause notice to be given of the holding of a special primary election for the purpose of selecting delegates to a convention of said respective parties for the purpose aforesaid; that neither of said managing or controlling committees gave such notice to respondents, and

that, under the law, it then became the duty of respondents to cause a notice to be given of the holding of said primary election for the election of delegates as aforesaid, "in conformity with Article 11, Chapter 30 of the Revised Statutes of Missouri, 1919, particularly section 4975 thereof;" but that respondents have refused and failed so to do, have publicly announced that they would not so do, "and have taken the position that no political party can nominate candidates for the office of a member of the Board of Education of the City of St. Louis, but that all such nominations must be made by petition and the names of the candidates placed on a non-partisan ballot; and that demand upon the aforesaid Board of Election Commissioners to give the notice aforesaid and call this election would be useless." And it is averred that the relators are interested in the nomination of candidates for members of the said Board of Education, on said respective party tickets, and are remediless in the premises by and through the ordinary process or proceeding at law.

The return, after making certain admissions as to the facts, in substance denies that under the existing law it became the duty of respondents to cause a notice to be given of the holding of a primary election for the purpose aforesaid, averring that respondents have no right or authority, and were charged with no duty, so to do. To this return, as said, relators filed their motion for judgment on the pleadings.

Relators' alleged right to the writ is predicated upon the provisions of sections 4974, 4975, 4976, Revised Statute 1919, found in Article 11, of Chapter 30, of the revision of 1919, relating to "primary elections in cities of 100,000 inhabitants and over." In considering the contention that these sections are here applicable, and making it the duty of the Board of Election Commissioners of the City of St. Louis, respondents herein, to take steps for the calling and holding of a primary election to select delegates to conventions of the said respective political parties for the purpose of nominating candidates for the Board of Education in said city, it is necessary to notice the stat-

utes, general and special, relating to the nomination of candidates for public office, with some brief history of those acts with which we are here directly concerned.

The City of St. Louis, of course, constitutes a school district, and as such is governed by a special law, now Article 16, Chapter 102, of the Revised Statute 1919, relating to school districts in cities of 500,000 inhabitants or over. Section 11456, of the last mentioned article and chapter, provides that supervision and government of public schools and public school properties within such districts shall be vested in a board of twelve members. Other sections provide the qualifications, powers and duties of said board, and for the election of the members thereof. No provision is there made, however, for the nomination of candidates for such office.

Article 4 of Chapter 30, Revised Statute 1919, consisting of sections 4802 to 4822, inclusive, of said revision, deals with the nomination of candidates for public office in general. Section 4802 provides as follows:

"Nomination of candidates.—Any primary election as hereinafter defined, held for the purpose of making nominations to public office, and also electors to the number hereinafter specified, may nominate candidates for public offices to be filled by election within the State. Such nomination shall be made by filing a certificate of nomination, executed with the formalities prescribed for the execution of an instrument affecting real estate."

The further sections of the last-mentioned article and chapter make provision concerning nominations by primary election or petition by electors.

Article 5, of Chapter 30, Revised Statutes 1919, consisting of sections 4823 to 4856 inclusive, constitutes the general primary election law of this State. Section 4823 thereof provides as follows:

"Nominations, how made—exceptions.—Hereafter all candidates for elective offices shall be nominated by a primary election held in accordance with this article. This article shall not apply to special elections to fill vacancies, nor to county superintendents of schools, to city

officers not elected at a general state election, to town, village or school district officers."

It will be seen, therefore, that the general primary law exempts from its application nominations for school district officers.

Article 11, of Chapter 30, Revised Statutes, 1919, supra, relating to primary elections in cities of 100,000 inhabitants or over, contains sections 4974, 4975 and 4976 referred to above, which are as follows:

"Sec. 4974. Primaries in cities with one hundred thousand inhabitants.—All primary elections hereafter held by any political party having polled at least one-fourth of the total vote cast at the next preceding general election for the purpose of nominating candidates for public offices *or for the election of delegates to a party convention held for the purpose of nominating candidates for public offices in cities of one hundred thousand inhabitants or over* shall be held under and subject to the following provisions: And for the purpose of determining the population of such cities the aggregate vote cast for the first candidate on each ticket voted for at the last preceding presidential election in such cities shall be multiplied by five and the product shall be deemed to be the number of inhabitants in such city." (Italics ours.)

"Sec. 4975. Notice of election.—The board of election commissioners in such cities, upon notification of the managing or controlling committee of such political party before mentioned, shall cause a notice to be printed, in at least two daily newspapers printed in the English language, at least ten days prior to the holding of such election, which notice shall state time and place of holding same, and the offices for which nominations are to be made: Provided, however, that the board of election commissioners shall, within five days, in the event of the failure or neglect of said managing committee to give such notice at least thirty-five days before the regular election, cause to be advertised, as above, a notice

of a primary election to be held for such political party."

"Sec. 4976.    Polling places—districts, etc.—Each ward in such cities shall have two polling places, to be designated by the board of election commissioners: *Provided,* that the board of election commissioners shall divide said ward into two districts, which shall each contain as near as possible, without dividing any election precinct, an equal number of voters, and the polling places shall then be selected by him, as near as may be practicable, in the center of each district."

Article 12, of said Chapter 30, Revised Statutes 1919, relates to primary elections in cities having over 400,000 inhabitants.    That article is a special primary law, applicable to the city of St. Louis.    But section 4990 thereof, provides:    "Nothing in this article shall be understood to apply to the nomination or election . . . of members of boards of education, or shall apply in any way to school nominations or elections."

It thus appears that the nomination of candidates for the office of school director or member of the board of education, is exempted from both the general primary law and the special primary law applicable to the city of St. Louis.    And it is quite clear that under the general statute relating to nominations, as now found in the revision of 1919, namely, Article 4, of Chapter 30, Revised Statutes 1919, supra, no authority is any longer found for nominating candidates for public office by the convention method.    And unless sections 4974, 4975 and 4976, supra, upon which relators rely, are applicable to the City of St. Louis, and furnish authority for the calling and holding of a primary election to select delegates to conventions for the purpose of nominating candidates for the Board of Education in said city, and make it the duty of these respondents to take steps to call and hold each election, then the contention of relators must fail.

Sections 4974, 4975 and 4976, supra, (Revised Statutes 1919), which may be readily traced through the re-

vision of 1899 and 1909, are, with certain modifications, the same as the first three sections of the act of 1891, on primary elections. [See Laws 1891, p. 136.] That act was one to amend Article 4 of Chapter 60, Revised Statutes 1899, by adding thereto fourteen new sections; and by its terms applied to cities of 300,000 inhabitants or over. It contained nothing requiring candidates for public office to be nominated in any particular manner, but, by section one thereof, provided as follows:

"All primary elections hereafter held by any political party having polled at least one-fourth of the total vote cast at the next preceding general election for the purpose of nominating candidates for public offices or for the election of delegates to a party convention held for the purpose of nominating candidates for public offices in cities of 300,000 inhabitants or over, shall be held under and subject to the following provisions."

It 1893 section one of the Act of 1891 was amended to make the act applicable to cities of 100,000 inhabitants or over. As thus amended the act continued to apply to the City of St. Louis until 1897, when a special primary law was enacted applicable to cities of 300,000 and over (see Laws 1897, p. 117). Section 1 of the Act of 1897, provided that the Act of 1891, and the Act of 1893 amending the same, "in so far as said acts apply to cities of 300,000 inhabitants or over, are hereby repealed."

It therefore appears that the Legislature, in enacting the Act of 1897, applicable to cities of 300,000 inhabitants or over, intended that the Act of 1891, as amended in 1893, and which on its face then applied to cities of 100,000 inhabitants and over, should apply only to cities having a population of 100,000 or more and less than 300,000. It is contended here by relators that the language quoted above from section 1 of the Act of 1897, supra, did not have the effect of repealing the Act of 1891 (as amended in 1893), *pro tanto*, and could not operate as an amendment thereto. But in the view which we take of the case before us, we deem it unneces-

sary to consider the technical import of the language mentioned.

It may be noted that the special Primary Law of 1897, supra, applicable to cities of 300,000 inhabitants or over, was superseded in 1901 by another special primary law applicable to cities of such population. This latter became Article 11 of Chapter 43 of the Revised Statutes of 1909. It was repealed in 1913, and a new law enacted applicable to cities having over 400,000 inhabitants; which act, with the addition of two sections in 1915, is now Article 11 of Chapter 30, Revised Statute 1919, to which we have referred above.

It is contended by relators that since the special primary law now in force, applicable to cities of 400,000 inhabitants or over (Article 12, Chapter 30, Revised Statute 1919) does not, by its terms. apply to the nomination of "members of boards of education, section 4974, 4975 and 4976, supra, are here applicable as said sections apply to cities of 100,000 inhabitants and over, and the City of St. Louis is a city of more than 100,000 inhabitants. As to this we may say that apart from the effect of the enactment of the Act of 1897, supra, it appears that to take relators' view that said sections are applicable in the instant case would be to violate the manifest spirit of the special, primary law applicable to said city. viz., Article 12, Chapter 30, Revised Statute 1919, supra. As shown above, section 4990 of said special law expressly exempts from its operation nominations for members of boards of education, or other "school nominations," just as the general primary law exempts from its operation "school district officers," for the obvious purpose of preventing partisanship entering into such elections. And if sections 4974, 4975 and 4976, supra, are applicable to the City of St. Louis, upon relators' theory, then they may be as well regarded as authorizing nominations for school offices to be made by the direct primary therein referred to as by the convention method.

But we need not and do not place our decision upon the ground that these sections relied upon cannot, for the reasons noted, have application to a city of 400,000 inhabitants or over, with respect to such elections as are exempted by the special primary law applicable to such cities. It will be observed that sections 4974, 4975 and 4976, Revised Statute 1919, do not purport to authorize or require that candidates for any public office be nominated in any particular manner. Section 4974 merely provides that ''all primary elections hereafter held by any political party . . . for the purpose of nominating candidates for public offices or for the election of delegates to a party convention held for the purpose of nominating candidates for public offices in cities of 100,000 inhabitants or over, shall be held under and subject to the following provisions.'' The effect thereof is simply to provide that such primary elections as may be authorized to be held in such cities (for the purpose of either nominating candidates for public office or for the election of delegates to a convention for such purpose) shall be held in accordance with the provisions which follow. The remaining sections of said Article 11. Chapter 30, Revised Statutes 1919, provided merely the procedure to be observed in calling and conducting such primary elections. The act wherein these sections, 4974, 4975 and 4976, first appear, viz., the Act of 1891, did not purport to establish or vouchsafe any right to select candidates for public office either by primary or convention; nor does the act, as it is now found in Article 11 of Chapter 30, of the Revised Statutes of 1919. Such right must be found, if at all, in the general law relating to the nomination of candidates for public office.

Prior to 1907, the statutes of this State did not require candidates for public office on party tickets to be nominated by primary elections; but in that year the Legislature passed a general primary law (Laws 1907, p. 268). The first section of that act is as follows:

"Hereafter all candidates for elective offices shall be nominated by a primary held in accordance with this act. This act shall not apply to special elections, to fill vacancies, nor to county superintendents of schools, to city officers not elected at a general state election, to town, village and school district officers."

The Act of 1907 was repealed in 1909, and a similar act enacted in lieu thereof, being Article IV of Chapter 43, Revised Statutes 1909. The first section of the Act of 1909, (Sec. 5855, R. S. 1909) is identical with the first section of the Act of 1907, supra, except that the word "act" is changed to "article." And the Act of 1909, has, with slight amendment, become Article 2 of Chapter 30, Revised Statutes 1919, section 4823 thereof being identical with section 5855, Revised Statutes 1909.

When the general primary Act of 1907 was enacted, our statutes, sections 7078 to 7111, Revised Statutes 1899, made provision for the nomination of candidates for public office by, convention, by primary election, or by "certificates of election" (or petition) signed by electors. The above named sections of the revision of 1899 became (with the addition of a new section in 1901, numbered 5844) Article III of Chapter 43, of the Revised Statutes of 1909, being sections 5833 to 5854 of that revision. Said section 5833 (Revised Statutes 1909), being section 7078, Revised Statutes 1899, was as follows:

"Any convention of delegates or primary election as hereinafter defined, held for the purpose of making nominations to public office, and also electors to the number hereinafter specified, may nominate candidates for public offices to be filled by election within the state. Such nominations shall be made by filing a certificate of nomination, executed with the formalities prescribed for the execution of an instrument affecting real estate."

In 1919 (Laws 1919, p. 328) said section 5833 (Revised Statutes 1909) was repealed and a new section was enacted in lieu thereof which became section 4802 of the Re-

vised Statutes of 1919. Said section 4802 (Revised Statutes 1919) has been quoted in full above, and it will be seen that all reference to a convention of delegates has been eliminated therefrom.

Section 5836 of the revision of 1909, defining "a convention of delegates," was by said Act of 1919 repealed *in toto*. And the Act of 1919 eliminated from sections 5842 and 5843 (Revised Statutes 1909) all reference to conventions. By obvious oversight the Legislature in 1919 failed to eliminate language in section 5838, Revised Statutes 1909 (now section 4806, Revised Statutes 1919) referring to a nominating convention; but the matter is here inconsequential as a reading of the section will disclose.

It seems entirely clear, therefore, that by the general primary law and the said Act of 1919, the Legislature intended to abolish entirely the nomination of candidates for public office by nominating conventions. In State ex rel. Punch v. Kortjohn, 246 Mo. 34, 150 S. W. 1060, it is said that the object of the primary act of 1907 was evidently to abolish the convention system of nominating candidates upon party tickets; though it is there held that the Legislature did not intend to abolish nominations by certificate of election or petitions signed by electors.

Though prior to 1919 section 5833, Revised Statutes 1909, appeared to give authority for the nomination of candidates for the Board of Education in the City of St. Louis—since such nominations could not be made by direct primary—such authority, if any, has been taken away by the Act of 1919, repealing said section and enacting in lieu thereof a new section which omits all reference to a "convention of delegates." As it stood prior to 1919, that section provided that a convention of delegates, or primary election, or electors to the number specified, might nominate candidates for public office; but the section enacted in lieu thereof in 1919 gives authority to nominate candidates for public office by a direct primary or by certificates signed by electors

It follows, therefore, that the general law pertaining to nominations, wherein must be found, if at all, the right, alleged to be vouchsafed to relators, to require respondents to call a primary election for choosing delegates to party conventions for the purpose of nominating candidates for the board of education, can no longer be said to afford authority for the calling and holding of such elections. And though section 4974 has (doubtless through oversight) remained unchanged, by the said Act of 1919 the intent of the Legislature to deny the right to make any such nominations by convention is made manifest. On the other hand, the right to make such nominations by "certificates of nomination," or petitions signed by the required number of electors, as is done in school elections generally throughout the State, cannot be doubted.

To entitle relators to our peremptory writ of mandamus it must be made to appear that they have a clear legal right to the performance by respondents of a duty enjoined upon the latter by law. We regard it as clear that respondents are charged by law with no duty to call a primary election for the purposes mentioned, but that the calling thereof would be in violaton of law.

Other considerations might, in any event, deter us from predicating a peremptory writ of mandamus upon the meager and indefinite provisions of sections 4974, 4975 and 4976, supra, but in the view of the case expressed above these need not be discussed.

It follows that the alternative writ heretofore issued herein should be quashed, and it is so ordered. All concur except *Reynolds, P. J.,* who is absent.