STATE OF MISSOURI at the Relation of SAMUEL C. HAYDEN, Relator, v. HARRY L. THOMAS, THOMAS R. HUNT, HERMAN M. LANGWORTHY, and WILLIAM F. WOODRUFF, as Members of the Board of Election Commissioners of Kansas City, Missouri.—No. 39279.

JOHN A. LAUCK, Relator, v. THOMAS R. HUNT et al.—No. 39280.—182 S. W. (2d) 584.

Court en Banc, September 15, 1944.

*Lee D. Seelig* and *Thomas J. Stubbs* for relator.

*Donald E. Lyons* and *James T. Britt* for respondents.

■ CLARK, J.—Original proceedings in mandamus to compel respondents, Board of Election Commissioners of Kansas City, to place upon the ballots at the general election to be held on November

7, 1944, as candidates for the office of justice of the peace for the Seventh district of Kaw Township in Jackson County, the name of Samuel C. Hayden as the candidate of the Democratic party and the name of John A. Lauck as the candidate of the Republican party.

Each relator filed a separate petition, but, as the facts are similar and questions of law identical, the cases are consolidated and will be treated in one opinion.

At the general election in November, 1942, Joseph J. Dougherty was elected to the office of justice of the peace for said district for a term of four years. Thereafter he duly qualified and held the office until his death on August 11, 1944.

On August 1, 1944, being the first Tuesday in August, under our statutes a general state-wide primary election was held at which candidates were nominated by both the Democratic and Republican parties for offices to be voted on at the ensuing general election. No candidate was nominated at the primary for the office of justice of the peace for said district because there was then no vacancy and the encumbent, Dougherty, had more than two years yet to serve.

A few days after the death of Dougherty a meeting was held by the Jackson County Central Committee of the Democratic party and the name of relator, Hayden, certified to the county clerk as the candidate of that party for justice of the peace of said district to be voted on at the coming general election. A meeting was also held by the Jackson County Central Committee of the Republican party and the name of relator, Lauck, certified to the county clerk as the Republican candidate. It is conceded that these meetings were regularly held; the names of the candidates duly certified; that each candidate possesses the necessary qualifications for the office and has deposited the filing fee and filed the declaration of candidacy required by statutes.

After Dougherty's death one Charles O. Ferguson filed with the county clerk his petition as an independent candidate for justice of the peace under Section 11534, Revised Statutes Missouri 1939. [R. S. A., sec. 11534.] The county clerk certified to the Board of Election Commissioners the names of the three candidates for inclusion on the ballot. Then Ferguson filed with the Board his protest against the inclusion of the name of each relator as the candidate of his respective party, and the Board by resolution sustained the protest.

The case involves a determination of the statutory powers of party central committees. Section numbers hereafter mentioned, unless otherwise designated, refer to sections of the Revised Statutes of 1939 and the corresponding sections of Missouri Revised Statutes Annotated.

Prior to 1941 Section 11538 expressly granted to the central committee power to select party candidates "in case of any vacancy in said nomination, by resignation, death or otherwise," and Section

11562 provided: "Vacancies occurring after the holding of any primary *or where no person shall offer himself as a candidate before such primary,* shall be filled by the party committee," etc. Section 11538 was amended in 1941 and again in 1943, [Session Acts 1941, p. 354; Session Acts 1943, p. 535] in both instances the wording was changed to read: "in case of any vacancy in said nomination, by resignation or death and not otherwise." The 1941 amendment to Section 11562 [Session Acts 1941, p. 353] changed the wording to read: "Vacancies occurring after the holding of any primary and resulting from the death or resignation, and not otherwise, of the nominee of a party at such primary, shall be filled by the party committee," etc.

It is contended that these amendments, particularly the exclusion from Section 11562 of the words "or where no person shall offer himself as a candidate before such primary," deprive the central committee of the power to fill a vacancy where, as in the instant case, no person offered himself as a candidate of the party at the primary. Undoubtedly the amendments do have that effect as to any office which was to be voted on at the primary and as to which prospective candidates had the opportunity to offer themselves. The amendments may have the further effect, which the general assembly may or may not have intended, to prevent the central committee from filling a vacancy resulting from the death or withdrawal before the primary of all candidates who have filed for a particular office. Apparently, the chief purpose of the amendments was to encourage the selection of candidates by the electors of the party rather than by the party committee. However, it does not follow that the central committee has been deprived of the power to select a party candidate for an office which must be filled at the general election, but which could not have been voted on at the primary. Dougherty's term of office having more than two years to run at his death a vacancy has occurred which the law contemplates shall be filled at the next general election. [State ex rel. Asotsky v. Hicks, 346 Mo. 640, 142 S. W. (2d) 472.] This vacancy occurred after the primary and could not then have been voted on.

In State ex inf. Barrett v. McClure, 299 Mo. 688, 253 S. W. 743, the facts were that a county treasurer, elected in 1921 for a term of four years, died on August 3, 1922. His widow was appointed by the governor to fill the vacancy "for the unexpired term." The state primary in 1922 was held on August 1st, two days before the treasurer's death. After his death one Shumard was selected and certified as a candidate by the Republican county committee, his name was placed on the ballot and he received a majority of the votes cast for treasurer. The appointee, Mrs. McClure, refused to relinquish the office and the case came to this court on quo warranto. We sustained the power of the central committee to make the nomination

and held that the relator, Shumard, had been legally nominated and elected. We said: ''Originally special elections were provided for to fill vacancies so as to cut short the tenure of appointees. Apparently the expense and trouble of having special elections to fill vacancies caused the Legislature, in 1879, to provide for vacancies to be filled by appointment until the next succeeding general election. This shows that the legislative policy of the State has been to fill a vacancy for an elective office by election as soon as practicable after the vacancy occurs.'' We then said, in effect, that ''the next general election'' does not mean an election at which all the machinery of election can be called into play, including the primary election law, but means the first general election occurring after the vacancy. Of course, if for insufficient time or other reason no one is elected at the next general election after the vacancy, the appointee will hold until his successor is elected and qualified.

In State ex rel. v. Kortjohn, 246 Mo. 34, 150 S. W. 1060, the facts were that the Progressive party was organized in Missouri after the state primary, but before the general election in 1912. That party resorted to three methods to get the names of its candidates on the ticket for the general election, to wit: (1) a delegate convention; (2) electors' petitions; (3) certificates of its central committee. We held that the state primary law abolished the convention method, but did not affect ▮▮▮ the right of any candidate to get his name upon the ballot by petition signed by the requisite number of electors, the statute authorizing that method [now Section 11525] not having been repealed by the state primary law. We also held that, as the Progressive party did not complete its organization in time to participate in the state primary, it was entitled to place its candidates upon the ballot by certificates of its central committee, even though its committee was merely de facto, not having been chosen at the primary as provided by law. In speaking of the function of the central committee we said: ''Political committees are the head and front of political organizations. They are the managing and guiding officers. In fact, there can be no organization without officers . . .''

In State ex rel. v. Hostetter, 137 Mo. 636, 39 S. W. 270, we held that when a vacancy occurs after the time for nominations has passed, the proper party authority may make nomination thereto and it is the duty of the proper officer in preparing the ballot for the next election to place the name of the office thereon, whether any nomination is made or not.

All the cases discussed herein were decided on the statutes as they existed prior to the amendments of 1941 and 1943, above mentioned, but we think those cases rest upon sound principles which are applicable to the facts of the instant case. Our laws recognize political parties as useful adjuncts to our system of government. Accordingly, while preserving the right of candidates to run for office independent-

ly, we have enacted laws regulating nominations by political parties. It is the policy of those laws to require party nominations to be made by the electors of the party where possible, but we do not think the law prevents a political party from making nominations by its duly constituted committee when it has had no opportunity to make them by its electors at the regular primary. In other words, the state primary law is inapplicable to nominations for vacancies in office occurring too late to be voted on at the state primary. Formerly such vacancies were filled at special elections and nominations therefor were made by or under the direction of party committees. Under present statutes such vacancies are filled at the next general election, but Section 11546 still provides that the state primary law "shall not apply to special elections to fill vacancies." Considering all the statutes mentioned, we think the state primary law provides the method for nominations to all offices to be filled at the ensuing general election, except as to vacancies occurring too late to be voted on at the state primary.

Cases from other jurisdictions are of little aid in solving this problem as it depends upon the policy indicated by our own statutes. The curious may consult the annotations under "Elections" in 132 A. L. R. and under "Filling Vacancy in Nomination" in 148 A. L. R.

We commend the parties and counsel on both sides of these cases for their conduct in expediting a decision. The cases were filed in this court on September 11, 1944, and arguments heard the same day. Respondents entered voluntary appearance and waived issuance of a preliminary writ. Counsel for all parties urged a speedy decision because this controversy has delayed the printing of the ballots and unless quickly decided thousands of members of our armed services, serving in remote parts of the world, will be denied the privilege of voting. It was stated that more than ten thousand applications for absentee ballots have been filed in Jackson County and estimated that the number of such applications will be doubled before election. The next day after argument this court decided the issues for relators and ordered the issuance of a permanent writ of mandamus, opinion to follow.

Accordingly, it is hereby ordered that a permanent writ of mandamus issue, requiring respondents to cause the name of each relator to be printed on the ballot at the ensuing general election as the candidate of his respective party for the unexpired term as justice of the peace for the Seventh district of Kaw Township in Jackson County. All concur.