UNITED STATES v. WILSON et al.

No. 16745.

District Court, W. D. Missouri, W. D.
Aug. 9, 1947.

Richard K. Phelps, Sp. Asst. Atty. Gen., of Kansas City, Mo., L. E. Broome and William A. Paisley, Asst. Attys. Gen., both of Washington, D. C., for plaintiff.

T. V. Conrad, of Kansas City, Mo., for defendant William D. Wilson.

Ira B. McLaughlin, of Kansas City, Mo., for defendants Melham, Klein, Burke and Holmes.

RIDGE, District Judge.

Defendants, officials and precinct workers at a primary election held in the State of Missouri, at which candidates for the United States Senate and Representatives of the House of Congress were nominated, are under indictment returned pursuant to Section 19 of the Criminal Code, Title 18, U. S.C.A. § 51, charged with conspiracy to injure and oppress certain voters in the Tenth Precinct of the First Ward, in Kansas City, Missouri, of rights and privileges secured to them "by the Constitution and laws of the United States." Specifically, defendants are charged with having conspired to prevent and cause to be prevented certain voters of said precinct from exercising

814

their right to vote; with permitting and causing unqualified and fictitious persons to vote at said election; and, to falsely, fraudulently and fictitiously certify the total number of votes received for Representatives in Congress and United States Senators at said primary election.

■ Defendants move to dismiss the indictment so returned against them on five separate grounds. The first point so raised by defendants challenges the applicability and pertinency of Section 19, supra, to a primary election held pursuant to the laws of the State of Missouri. Defendants contend that the state of facts alleged in the indictment pertaining to a primary election held under the laws of the State of Missouri for the nomination of party candidates for the offices mentioned are such that said party primary does not affect the right of the people involved "to choose a Representative in Congress from the Fifth District of Missouri, or to elect a Senator in Congress from Missouri, as to bring the matters and things charged in said indictment within (Federal) Constitutional protection so as to render applicable the provisions of said section (§ 19) of the Criminal Code." In other words, defendants' claim is; that the primary election laws of the State of Missouri are not an "integral part of the election machinery", for electing members of the Congress of the United States; that if any rights of the legal voters of the precinct a'nd ward above referred to were violated by them as charged in the indictment herein they were not rights secured to such voters by the Constitution and laws of the United States, but rights wholly derived from local laws of the State of Missouri; consequently, they assert, "no Federal offense" has been committed by them and the indictment herein should be dismissed.

In support of such contention, defendants undertake to distinguish the decision of the Supreme Court of the United States, in the case of United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 1040, 85 L.Ed. 1368, where the primary election laws of the State of Louisiana were considered and held to be "an election within the meaning of the constitutional provision (Sections 2,

and 4, Article I, U.S.Const.) and * * * subject to congressional regulation as to the manner of holding it", from the party primary system as in vogue in the State of Missouri. Defendants contend that the case of United States 'v. Gradwell, 243 U.S. 476, 37 S.Ct. 407, 61 L.Ed. 857, is determinative of the issue here involved.

As to the Classic case supra, defendants assert that the Supreme Court there ruled that certain distinctions found in the Louisiana party primary law rendered the conduct of the election officials involved in the Classic case to be an "interference with rights of voters participating in a primary" election in that State, because the conduct of such election officials was, under Louisiana party primary law, an "interference with the effective choice of the voters (participating in said primary) at the only stage of the election procedure (in the State of Louisiana) when their choice is of significance", because nomination at primary elections in Louisiana is equivalent to election. They say Missouri being a "border State" no such situation exists. Consequently, the Classic case, supra, is, according to defendants' contention, no authority for holding that a primary election conducted under the laws of the State of Missouri is an election within the meaning of Secs. 2 and 4, Art. I, of the Constitution of the United States.

We think defendants read the opinion in the Classic case with "stultifying narrowness". Without undertaking a complete analysis of the background and the facts involved in the Classic case, we think it clear that the first question there considered by the Court was, "whether the right to choose, at a primary election, a candidate for election as representative, is embraced in the right to choose representatives secured by Article I, § 2" of the Constitution of the United States. See page 315 of that opinion in 313 U.S., 61 S.Ct. 1038, 85 L.Ed. 1368. The Court said, 313 U.S. at page 317, 61 S.Ct. at page 1039, 85 L.Ed 1368, the question so considered had "not been prejudged by any decision of (the) Court". After considering that proposition, the Court patently ruled, (313 U.S. at page 318, 61 S.Ct. at page 1039, 85 L.Ed. 1368): "Where the state law has made the primary

an integral part of the procedure of choice, or where in fact the primary effectively controls the choice, the right of the elector to have his ballot counted at the primary, is likewise included in the right protected by Article I, § 2. And this right of participation is protected just as is the right to vote at the election, *where the primary is by law made an integral part of the election machinery, whether the voter exercises his right in a party primary which invariably, sometimes or never* determines the ultimate choice of the representative." (Italics supplied.)

True, as contended by defendants, the Classic case was concerned with a primary election law in a State where nomination at the primary was tantamount to election to office. That fact, however, does not limit or confine the rule announced in the Classic case, as above quoted, as only being applicable to primary elections held in States where similar consequences of a primary election are to be found. The specific rule announced in the Classic case is, that the constitutional provision there considered (Sec. 2, Art. I) was applicable to primary elections held in *any* State whose laws made such primaries an "integral part of the procedure of choice" of electing Representatives in Congress. As manifest from the opinion, such rule is applicable in a State where the "voter exercises his right in a party primary which *invariably, sometimes* or *never* determines the ultimate choice of the representative", if the primary election laws of the State are an "integral part of the election machinery" of the State. In deciding the specific issue involved in the Classic case, the Court had to apply the rule above announced to the particular facts there considered. In so doing, the Court stated that they were required "to hold that a primary election which involves a necessary step in the choice of candidates for election as representatives in Congress, and which in the circumstances of this case controls that choice, is an election within the meaning of the constitutional provision and is subject to congressional regulation * * *." In so applying the rule previously in said opinion announced by the Court, to the specific issue involved in the Classic case, the Court did not minimize, or

compass, the rule first announced so as to make it applicable only to factual situations as considered in the Classic case. All that the Court did in deciding the factual issue involved in the Classic case was to apply the rule to one of the several variables to which it is applicable. In so doing, the Court did not delete from the rule of law the other variables to which it is also applicable, namely, to primary elections held in States where the "voter exercises his right in a party primary which * * * sometimes or never determines the ultimate choice of the representative", if such "primary is by law made an integral part of the election machinery" of a State.

We do not believe that the decision in the Classic case, supra, can be distinguished from the primary election laws of any State, regardless of the consequences of the result of holding a primary, if the election laws of a State make such primary an "integral part of the procedure of choice" of members of·the Congress of the United States. When the Court in the Classic case stated that it was only those primary election laws that were "an integral part of the election machinery" of a State that are within the constitutional provisions here considered, the Court had in mind party primaries conducted by political parties, which were not State Governmental functions; and primary elections participated in by political parties which were in effect Governmental agencies and action taken by a State. See Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987, 151 A.L.R. 1110; Grovey v. Townsend, 295 U.S. 45, 55 S.Ct. 622, 79 L.Ed. 1292, 97 A.L.R. 680; Nixon v. Condon, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984, 88 A.L.R. 458. In Smith v. Allwright, supra, at pages 659, 660 of 321 U.S. 649, page 763 of 64 S.Ct., 88 L.Ed. 987, 151 A.L.R. 1110, the Court said of its decision in the Classic case: "We there held that Section 4 of Article I of the Constitution authorized Congress to regulate primary as well as general elections * * * 'where the primary is by law made an integral part of the election machinery.' * * * Consequently, in the Classic case, we upheld the applicability to frauds in a Louisiana primary of §§ 19 and 20 of the Criminal Code 18 U.S.C.A. §§ 51, 52. Thereby cor-

rupt acts of election officers were subjected to Congressional sanctions because that body had power to protect rights of Federal suffrage secured by the Constitution in primary as in general elections. * * * This decision depended, too, on the determination that under the Louisiana statutes the primary was a part of the procedure for choice of Federal officials. By this decision the doubt as to whether or not such primaries were a part of 'elections' subject to Federal control, which had remained unanswered since Newberry v. United States, 256 U.S. 232, 41 S.Ct. 469, 65 L.Ed. 913, was erased. * * * The fusing by the Classic case of the primary and general elections into a single instrumentality for choice of officers has a definite bearing on the permissibility under the Constitution of excluding Negroes from primaries. * * * Classic bears upon Grovey v. Townsend." 295 U.S. 45, 55 S.Ct. 622, 79 L.Ed. 1292, 97 A.L.R. 680.

In light of the interpretation of the Classic case, made by the Court in Smith v. Allwright, supra, we believe the only matter for consideration by this Court in disposition of the first point raised by defendants in their motion to dismiss is, to determine whether the primary election laws of the State of Missouri are an "integral part of the election machinery" used in that State for the elections of members of Congress.

In the State of Missouri, nominations of candidates and primary elections are provided for in Chapter 76, Arts. IV, and V, R.S.Mo.1939, Mo.R.S.A. In determining whether the provisions there made by the legislature of the State of Missouri for the nomination of candidates and the holding of primary elections are an integral part of the procedure of choice, the first question to be answered is, whether the statutory regulations providing for primary elections in Missouri are sufficient to warrant the conclusion that the State has undertaken to conduct such elections as a necessary part of the whole electoral process, and as a matter of public policy has elected to treat the party primary as a legitimate part of the process of electing members of Congress. An analysis of the primary election laws of the State of Missouri reveals that, in common with other States, as for instance in Louisiana, Missouri has exercised the discretion of "setting up machinery for the effective choice of party candidates, for Representatives in Congress, by primary elections, and by 'its laws eliminates, or seriously restricts the candidacy at the general election of all those who are defeated at the primary". The primary in the State of Missouri is conducted by the State, at public expense. Sec. 11559, R.S. Mo.1939, Mo.R.S.A. All candidates for elective offices are nominated at such primaries. Sec. 11546, R.S.Mo.1939, Mo.R.S.A. The primary is held biennially. Sec. 11547, R.S.Mo.1939, Mo.R.S.A. "The primary, as is the general election, is subject to numerous statutory regulations as to the time, place and manner of conducting the election, including provisions to insure that the ballots cast at the primary are correctly counted, and the results of the count correctly recorded and certified to the Secretary of State." U. S. v. Classic, supra, 313 U.S. page 311, 61 S.Ct. page 1036, 85 L.Ed. 1368. Cf. Sec. 11584, R.S.Mo.1939, Mo.R.S. A. The results of such elections are published by the Secretary of State. Sec. 11570, R.S.Mo.1939, Mo.R.S.A. Only the names of persons receiving the greatest number of votes at the primary as a candidate of a party for an office are placed on the official ballot at the following election. Sec. 11569, and 11595, R.S.Mo.1939, Mo. R.S.A. All ballots cast in an election for public officers within the State are printed at public expense and prepared by the Clerks of the County Courts of the respective Counties of the State. Sec. 11593 and 11594, R.S.Mo.1939, Mo.R.S.A. A more "elaborate, fair and elegant analysis" of the primary laws of the State of Missouri may be found in the opinion of the Supreme Court of said State, in State ex rel. Dunn v. Coburn, 260 Mo. 177, 168 S.W. 956, 957, than is here attempted to be stated. The 1909 primary election laws there analyzed are still the law of the State of Missouri relating to primaries, with minor exceptions, not here pertinent. An analysis of said primary law reveals that it is a compulsory system forming a part of the general election laws of the State for the election of public officials, including members

of Congress. That such system "is an integral part of the procedure of choice" of members of Congress by the electors of said State is not debatable. At the outset, the law declares that all candidates for elective offices shall be nominated by a primary election, held in accordance with Art. V, Chap. 76, R.S.Mo.1939, Mo.R.S.A. There is at once perceived an express limitation upon the powers of all political parties of adopting their own rules for the selection of members of Congress. State ex rel. v. Thomas, 353 Mo. 345, 182 S.W.2d 584. A primary held in the State of Missouri is a part of the election machinery by which is determined who shall be permitted to have their names appear upon the official election ballot as candidates for public office. The right to participate in said primary and to choose candidates for public offices is as valuable as the right to vote for them after they are chosen. Both such rights are safeguarded to qualified registered electors in each voting precinct in the State by the Constitution and laws of the State of Missouri, and are not subject to limitation by any action of the political parties participating in such primary; except that a voter may be subject to challenge for "attempting to vote other than the ticket of the party for which he is known to be affiliated", but when so challenged such voter may make oath or affirmation administered by one of the judges of the election, that he will "vote for the party nominees of the party he is voting, in the general election." If such oath or affirmation is made then the elector offering to vote in such primary has the absolute right to cast a ballot at said primary. Under the primary system in vogue in the State of Missouri, there is no possible way that any person can be elected to office unless he be chosen at the primary or nominated by petition as provided in Art. IV of Chap. 76, supra. The several statutes of said State which provide the method by which nominations are effected prescribe and define the rights of voters and electors in the State of Missouri and must be regarded as an integral part of the process of choosing public officers and as a part of the election laws of said State. The legislature of the State of Missouri, providing for the conduct of primary elections and placing them under the same safeguards and protection which the Constitution and laws of the State of Missouri throws around elections for office clearly provided that the general primary for the nomination of candidates for office in said State was to be considered, and, in fact was, made an "integral part of the election machinery" for electing public officers in said State, and particularly members of the Congress of the United States. Cf. State v. Taylor, 220 Mo. 618, 119 S.W. 373.

From what has been said, it is not necessary to prolong this memorandum with a discussion of United States v. Gradwell, supra, relied on by defendants in support of their motion. Suffice it to say that in the Gradwell case [243 U.S. 476, 37 S.Ct. 411, 61 L.Ed. 857], the Court stated that it need not and did not undertake to decide whether "a primary should be treated as an election within the meaning of the Constitution" of the United States. The Gradwell case involving alleged rights of candidates at a primary is not authority for the consideration of "rights and privileges of voters secured to them by the Constitution and laws of the United States".

█ The second point raised by defendants is, that Section 19 of the Criminal Code, supra, "is so vague, indefinite and uncertain" that any person would not thereby be caused to know and be informed that the facts alleged in the indictment herein constituted an offense against and a violation of the laws of the United States. Fifty-three years ago, the Supreme Court of the United States in Ex parte Yarbrough, 110 U.S. 651, 4 S.Ct. 162, 28 L.Ed. 274, construed Sec. 19 of the Criminal Code. Since then it has consistently held that the right of qualified voters to cast their ballots at Congressional elections and have them counted as cast, is a right secured by the Constitution of the United States. Wiley v. Sinkler, 179 U.S. 58, 21 S.Ct. 17, 45 L.Ed. 84; Swafford v. Templeton, 185 U.S. 487, 22 S.Ct. 783, 46 L.Ed. 1005; United States v. Mosley, 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355; United States v. Saylor, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341; and United States v. Classic, supra. It is too late in the day to now contend that Sec. 19,

supra, is unconstitutional in the respects claimed in the second ground of defendants' motion to dismiss. "He who defies a decision interpreting the Constitution knows precisely what he is doing. If sane, he hardly may be heard to say that he knew not what he did." Screws v. United States, 325 U.S. 91, 105, 65 S.Ct. 1031, 1037, 89 L.Ed. 1495, 162 A.L.R. 1330. The same may be said with reference to an Act of Congress, construed many times by the Supreme Court of the United States.

■ The third, fourth and fifth grounds of attack on the indictment herein are to the effect that the facts alleged are insufficient to constitute an offense against the laws of the United States; that the indictment does not contain a charge in plain and concise language so as to inform defendants of the nature of the cause of accusation. Without analyzing the contents of the indictment, we think that it, in plain terms, apprises defendants of the specific offense with which they are charged, to-wit, "conspiracy to injure * * * citizens in the free exercise * * * of any right or privilege secured to (them) by the Constitution and laws of the United States". Said charge is alleged definitely enough to enable defendants to maintain a plea of double jeopardy. If any complaint may be made of the indictment herein, it is that it is not as concise as contemplated by Rule 7(c), Federal Rules of Criminal Procedure 18 U.S.C.A. following section 687.

In view of the foregoing, defendants' motion to dismiss the indictment herein is by the Court overruled.

Defendants have also filed a motion for a bill of particulars, stating eighteen instances in which they desire to obtain a more complete statement of the charge contained in the indictment returned against them. Most of the assignments contained in said motion for bill of particulars seek information relative to the names of the qualified voters in the precinct in question; and, the means by which it is alleged that defendants obstructed, hindered and prevented lawfully qualified voters from voting in said precinct.

■ Defendants are not entitled to be told the names of the witnesses who will appear at the trial on behalf of the Government. Gates v. United States, 10 Cir., 122 F.2d 571. The names and identity of the qualified voters of the precinct involved are equally available to the defendants as to the Government. The election records of said precinct are public records in the office of the Board of Election Commissioners of Kansas City, Missouri. The means employed by defendants in committing the offense with which they are charged are equally within the knowledge of the defendants and the Government, and the Government is not required to furnish by bill of particulars the means employed by defendants in committing such offense charged; United States v. Wexler, D.C., 6 F.Supp. 258; or the evidence which the Government will use to support such charge. United States v. Nat. Title Guaranty Co., D.C., 12 F.Supp. 473.

■ Defendants are charged in the indictment with having caused the names of certain qualified voters to be voted by fictitious persons. In their motion for bill of particulars, they seek the names and identity of the qualified voters in whose names and places defendants allegedly conspired to permit such a vote to be cast. We believe that defendants are entitled to that information. Defendants also seek the names, or identifying description of legal voters whom the defendants allegedly conspired to obstruct and prevent from casting their ballots. We believe defendants are likewise entitled to such information. Therefore, items five and six of the motion for bill of particulars are by the Court sustained, and the Government will furnish to defendants, within three days, the information therein requested.

In all other respects, the motion for bill of particulars is by the Court denied.

It is so ordered.