## WHITE v. LUBBOCK et al.
### No. 9540.

Court of Civil Appeals of Texas. Galveston. July 24, 1930.

W. Owen Dailey, of Houston, for relator.

Chas. E. Kamp, of Houston, for respondents.

GRAVES, J.

This is an original application to this court, based upon Senate Bill No. 16 approved February 14, 1930, whereby relator seeks of this

tribunal a writ of mandamus against the Executive Committee of the Democratic Party for Harris County, its chairman, secretary, and all other individual members, compelling them to ignore contrary instructions alleged to have theretofore been received by them from their superior officials in the Democratic Party of Texas, that is, the chairman and secretary of its State Executive Committee, and to permit him notwithstanding—as well as all others similarly situated—to vote in the ensuing two Primary elections to be held by such party in Harris county on the respective fourth Saturdays in July and August of 1930, in which, so far as material, he avers:

"I. That Relator is a resident, colored citizen, of Harris County, Texas, and is over twenty-one years of age, and has resided in said County more than two years, and is a duly qualified voter, tax payer, and property owner, and has paid his Poll Tax for the year 1929, and did so on January 14th, 1930, which was before January 31st, A. D., 1930, and that he is eligible under the laws of the State of Texas as an elector and qualified to vote in the Democratic Primaries to be held at the time required by law. * * *

"That on June 16th, 1930, D. W. Wilcox, Chairman of the State Democratic Executive Committee, addressed to all Democratic County Chairmen in Texas, including the respondents herein, a letter reading as follows:

" 'June 16, 1930.
" 'To all Democratic County Chairmen:

" 'As directed by the State Democratic Executive Committee of Texas at a meeting held in Austin on the 9th day of June, A. D., 1930, we beg to quote herein a resolution passed by said State Democratic Executive Committee for observance in the Democratic primary elections to be held on July 26, 1930, and August 23, 1930:

" 'Be it resolved that all eligible and legally qualified white electors, both male and female, who declare their allegiance to the Democratic party and who are in sympathy with the success of the Democratic party, in the next succeeding election, may become members of the Democratic party and shall be eligible to participate in the convention, primaries, and other activities of the party, until otherwise provided; and be it further resolved that all voters who participate in the primaries must take the statutory pledge: 'I am a Democrat and pledge myself to support the nominees of this primary.' "

" 'Accordingly, you are so directed and requested to communicate said resolution to all proper parties.' "

"IV. That about July 15th, the Relator herein, demanded of the respondents the privilege of voting in the Democratic Primaries above mentioned, and requested that the respondents for the Democratic Party in Harris County ignore said resolution which restricted the voters to white, and which denied him, a negro, the right to participate in such Primary, which request was refused.

"V. That the above quoted resolution and letter is an action by the State Executive Committee in the exercise of the power and authority attempted to be conferred upon it by article 3107 of the Revised Civil Statutes of Texas by an act of the First called session of the 40th Legislature (1927), c. 67, § 1 which reads as follows:

" 'Article 3107.—Every political party in this State through its State Executive Committee shall have the power to prescribe the qualifications of its own members and shall in its own way determine who shall be qualified to vote or otherwise participate in such political party; provided that no person shall ever be denied the right to participate in a primary in this State because of former political views or affiliations or because of membership or nonmembership in organizations other than the political party.'

"VI. And that all authority and power possessed by the respondents and said State Executive Committee is attempted to be conferred by such Article as amended, and that the action above mentioned bars the Relator and all other persons similarly situated from participating in the general primary elections for 1930 of the Democratic Party, and from voting upon and for the Candidates for United States Senator, and Representatives in the United States Congress: * * *

"VIII. That the said resolution above quoted is void and of no force and effect, and is wholly unauthorized by valid laws of this State, and that the act of the Legislature contained in article 3107, as amended, is void and of no force and effect in so far as it gives the power to prescribe the qualifications of the members of the Party by permitting them to discriminate on account of color; in violation of the rights of negroes under the Fourteenth and Fifteenth Amendments to the Constitution of the United States. * * * That Relator desires to vote in the Democratic Primary Elections in 1930, and all other Primary elections, and in good faith to take the test prescribed by article 3110 of the Revised Civil Statutes of Texas, and to comply with the pledge contained in that test.

"IX. That it is the purpose of the Democratic Executive Committee and the respondents here to prevent all negroes from voting in the Democratic Primaries of 1930, which is shown in a letter of the respondents to Relator's Attorney of Record herein, which is attached hereto and reads as follows:

" 'Dear Sir:
" 'Referring to your inquiry of today, permit me to advise that under our construction of the law a political party in the State of

Texas may prescribe the qualifications for membership in the party.

"'The State Democratic Executive Committee of Texas has heretofore prescribed that the qualification for membership shall be white members, and under that ruling we cannot permit negroes to vote in the coming Democratic Primaries in Harris County, Texas.'"

After dilatory pleas to the effect that the jurisdiction of such a suit is exclusively cognizable by a district court of the United States, and that there is a want of necessary parties in that none of the members or officers of the State Executive Committee of the Democratic Party were brought in, neither of which, we think, is well taken, the respondents answered with a general demurrer, a denial negativing "each and every allegation in Relator's petition and saying that the same are not true in whole or in part," and detailed special presentments to the effect that neither R. S. article 3107 nor the quoted resolution and instructions emanating from the Democratic Executive Committee of Texas, both of which were admitted to be extant as so charged by relator, were in any way either invalid or an infringement of any right or privilege existing in him by virtue of the Fourteenth or Fifteenth Amendments of the Federal Constitution, or under any other national or state law, but that on the contrary each and both were well within the authority of the sources from whence they came, to wit, the Legislature of Texas and the State Executive Committee of the Democratic Party of Texas, respectively, wherefore Relator neither was nor could become legally aggrieved by the enforcement of either with the objective he charged, such being the lawful privilege of those several bodies; finally that, irrespective of any statutory authority, the State Executive Committee of a political party in Texas, including that of the Democratic Party, has the power to determine who shall comprise its membership, and in this instance the State Committee of the latter having excluded the relator from membership in it, no right, privilege, or immunity, of his was thereby contravened.

These pleadings of both sides were duly verified.

We are not called upon to consider whether or not the statute in virtue of which this proceeding comes here (Senate Bill No. 16, approved February 14, 1930) is constitutional, that matter not having been drawn in question; if it had been, the duty would have devolved upon this court of passing upon it for itself, as was done by our Supreme Court as against the objections there raised in Love v. Wilcox, 28 S.W.(2d) 515, the jurisdiction of the two courts thereunder being made co-ordinate.

After careful consideration for the very brief time accorded the court by these belated litigants, we determine the writ sought should be refused, upon at least these conclusions:

1. The facts indispensable as a basis for the writ do not appear to have been established, but are in dispute; for instance, there is no evidence whatever that the relator is a Democrat, his mere ipse dixit upon oath in his petition that he is one, under the sworn denial of the respondents in their answer that such is the case, not constituting any proof, the two verified pleadings merely raising an issue of fact about the matter that called for the establishment of the averment by evidence; the same thing may be said concerning others of his allegations of fact.

On this feature his able counsel upon the oral argument mistakenly stated that this court was in position to take the recitations of his sworn petition as true, but the preceding statement has shown that to be error, each and all of them having been in like manner denied.

Relator's position here, therefore, is unlike that of the applicant for so drastic a writ as mandamus in every case he cites as relying on, there being in each of them establishment of the basic facts depended on. Certainly, on familiar authority, no one could be admitted into the fellowship of a special group of individuals holding particular beliefs as to political policies until he first at least established that he belonged to the same school of thought.

2. In a state like Texas, where the political parties have not by law been made either to perform any governmental function or to constitute any governmental agency by the payment by the State of their expenses of operation, or otherwise, but have only been regulated—however elaborately—as to how they shall elect their nominees (Waples v. Marrast, 108 Tex. 5, 184 S. W. 180, L. R. A. 1917A, 253), they are not state instrumentalities, but merely bodies of individuals banded together for the propagation of the political principles or beliefs that they desire to have incorporated into the public policies of the government, and as such have the power, beyond statutory control, to prescribe what persons shall participate as voters in their conventions or primaries; in no event, therefore, did the inveighed-against course of both the state and Harris county managers of the Democratic Party of Texas in so barring all but white Democrats from its primaries constitute action by the state of Texas itself that was interdicted by the invoked provisions of the National Constitution, but only the valid exercise through its proper officers of such party's inherent power (recognized but not created by R. S. article 3107) to determine who should make up the membership of its own private household. Waples v. Marrast,

supra, Grigsby v. Harris (D. C.) 27 F.(2d) 942, Nixon v. Condon (D. C.) 34 F.(2d) 464. As these cited opinions will disclose, this same holding has been twice heretofore made in Texas by federal courts, first in the Grigsby Case in the Southern District by Judge Hutcheson, next in the Nixon Case in the Western District by Judge Boynton; within the last few days the latter appears to have reiterated the pronouncement at San Antonio in No. 432 in Equity, Wiley v. Weber, et al., (No opinion filed).

The two cases especially relied upon by relator for a contrary purport, Nixon v. Herndon, 273 U. S. 536, 47 S. Ct. 446, 71 L. Ed. 759, and West v. Bliley (D. C.) '33 F.(2d) 177, affirmed by the United States Circuit Court of Appeals on June 30, 1930, 42 F.(2d) 101, do not present it, we conclude, upon the legal equivalent of the same state of facts. As Judge Boynton points out in Nixon v. Condon, supra, both these are distinguishable from the case at bar; Nixon v. Herndon in that the pre-existing statute of Texas there declared unconstitutional as violative of the Fourteenth Amendment, directly through edict of the state itself undertook to proscribe the negro solely on account of color, *there being then extant no attitude* of the Democratic Party of the state relative to his admission or exclusion, and he being otherwise shown under the facts obtaining to be a qualified voter; West v. Bliley, in that the law of Virginia makes a political party that elects to come under its provisions (there being an option not to do so) an agency of the state, which, in that event, pays the expenses of its operation and elections out of the public treasury, whereby the party's action in such circumstances becomes that of the state, hence falls alike under the condemnation of the Fourteenth and Fifteenth Amendments.

That situation seems a far cry from what appears in this cause, where the Democratic Party of Texas, which pays its own expenses and is in fact no sort of a governmental instrumentality, has alone acted.

These conclusions require the denial of the writ; it will be so ordered.

Writ refused.

PLEASANTS, C. J. (concurring).

I concur in the opinion of Justice GRAVES that the application should be refused for the reasons stated in that opinion. Our judgment might well rest upon those conclusions. It seems to me that the opinion of Judge J. C. Hutcheson in the case of Grigsby v. Harris, cited by Judge GRAVES, is a conclusive answer to relator's contention that the resolution of the State Democratic Executive Committee confining the participants in the primaries to white qualified electors is in effect a discrimination by the state against relator because of his color. No decision of the Supreme Court of the United States sustains such contention, but on the contrary the right of political parties to determine the qualification of the members of the party has been uniformly recognized by that court. Judge Hutcheson in the opinion cited with the usual force and clearness which characterizes his judicial writing shows the unsoundness of this contention, and cites the authorities which fully sustain his conclusions.

I am not disturbed as to what the Supreme Court of the United States in the omnipotence of its judicial power may hold on the question in some future opinion, but I am not disposed to lead the way to a change in! its present views upon this question by anticipating that they will be changed or modified in some future opinion.

I think the application should be refused for the further reason that the petition does not present any ground of relief cognizable and enforceable by this court under the provision of the act of the Legislature set out in the opinion of Justice GRAVES conferring original jurisdiction upon the Supreme Court and the Courts of Civil Appeals to issue writs of mandamus against the party officials and primary election officers named in the act. As stated in Justice GRAVES' opinion, the constitutionality of the act is not questioned by the respondents and need not be determined by this court in this proceeding. Whether valid or not, the act does not by its terms confer original jurisdiction upon the Supreme Court or Courts of Civil Appeals to hear and determine the complaint of relator that the action of the respondents denying him the right to vote in the Democratic Primary election is an infringement upon the rights guaranteed to him by the Constitution and laws of the United States. The power or jurisdiction conferred by the act is special and by well-settled rules of decision is limited to the strict terms of the grant. When so construed, the express language of the act only gives authority to the courts named to grant the writ of mandamus in original suits brought in such courts "to compel the performance in accordance with the laws of this state of any duty imposed upon them respectively by law." There is no ambiguity in this language, and by it the Legislature only intended to confer upon the Supreme Court and Courts of Civil Appeals original jurisdiction to issue writs of mandamus to compel the performance of a statutory duty by the persons charged with its performance.

This was the extent of the jurisdiction exercised by the Supreme Court in the case of Love v. Wilcox. The statute invoked by the petitioner in that case was construed by the Supreme Court as charging the respondents with the duty of placing Mr. Love's name as candidate for Governor upon the tickets to

be used in the coming Democratic Primary election.

The petition in this case does not ask mandamus upon any such ground, and it is not contended that. the respondents have failed or refused to perform any duty imposed upon them by any law of this state. Any suit relator may have for redress of his alleged grievances cannot be originally brought in this court, under the terms of the statute above quoted, and the trial court should have sustained the general demurrer to relator's petition. ·