## NIXON *v.* CONDON ET AL.

No. 265. Argued January 7, 1932. Reargued March 15, 1932.— Decided May 2, 1932.

Messrs. *James Marshall* and *Nathan R. Margold,* with whom *Messrs. Arthur B. Spingarn,* and *Fred C. Knollenberg* were on the brief, for petitioner.

78

*Mr. Ben R. Howell,* with whom *Mr. Thornton Hardie* was on the brief, for respondents.

80

*Messrs. J. Alston Atkins, Carter W. Wesley,* and *J. M. Nabrit, Jr.,* by leave of Court, filed a brief as *amici curiae.*

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The petitioner, a Negro, has brought this action against judges of election in Texas to recover damages for their refusal by reason of his race or color to permit him to cast his vote at a primary election.

This is not the first time that he has found it necessary to invoke the jurisdiction of the federal courts in vindication of privileges secured to him by the Federal Constitution.

In *Nixon* v. *Herndon,* 273 U. S. 536, decided at the October Term, 1926, this court had before it a statute of the State of Texas (Article 3093a, Revised Civil Statutes, afterwards numbered 3107) whereby the legislature had said that " in no event shall a negro be eligible to participate in a democratic party primary election [held in that State]," and that " should a negro vote in a democratic primary election, the ballot shall be void," and election officials were directed to throw it out. While the mandate was in force, the Negro was shut out from a share in primary elections, not in obedience to the will of the party speaking through the party organs, but by the command of the State itself, speaking by the voice of its chosen representatives. At the suit of this petitioner, the statute was adjudged void as an infringement of his rights and liberties under the Constitution of the United States.

Promptly after the announcement of that decision, the legislature of Texas enacted a new statute (L. 1927, c. 67)

repealing the article condemned by this court; declaring that the effect of the decision was to create an emergency with a need for immediate action; and substituting for the article so repealed another bearing the same number. By the article thus substituted, " every political party in this State through its State Executive Committee shall have the power to prescribe the qualifications of its own members and shall in its own way determine who shall be qualified to vote or otherwise participate in such political party; provided that no person shall ever be denied the right to participate in a primary in this State because of former political views or affiliations or because of membership or non-membership in organizations other than the political party."

Acting under the new statute, the State Executive Committee of the Democratic party adopted a resolution " that all white democrats who are qualified under the constitution and laws of Texas and who subscribe to the statutory pledge provided in Article 3110, Revised Civil Statutes of Texas, and none other, be allowed to participate in the primary elections to be held July 28, 1928, and August 25, 1928," and the chairman and secretary were directed to forward copies of the resolution to the committees in the several counties.

On July 28, 1928, the petitioner, a citizen of the United States, and qualified to vote unless disqualified by the foregoing resolution, presented himself at the polls and requested that he be furnished with a ballot. The respondents, the judges of election, declined to furnish the ballot or to permit the vote on the ground that the petitioner was a Negro and that by force of the resolution of the Executive Committee only white Democrats were allowed to be voters at the Democratic primary. The refusal was followed by this action for damages. In the District Court there was a judgment of dismissal, 34 F.

(2d) 464, which was affirmed by the Circuit Court of Appeals for the Fifth Circuit, 49 F. (2d) 1012. A writ of certiorari brings the cause here.

Barred from voting at a primary the petitioner has been, and this for the sole reason that his color is not white. The result for him is no different from what it was when his cause was here before. The argument for the respondents is, however, that identity of result has been attained through essential diversity of method. We are reminded that the Fourteenth Amendment is a restraint upon the States and not upon private persons unconnected with a State. *United States* v. *Cruikshank*, 92 U. S. 542; *Strauder* v. *West Virginia*, 100 U. S. 303; *Ex parte Virginia*, 100 U. S. 339, 346; *James* v. *Bowman*, 190 U. S. 127, 136. This line of demarcation drawn, we are told that a political party is merely a voluntary association; that it has inherent power like voluntary associations generally to determine its own membership; that the new article of the statute, adopted in place of the mandatory article of exclusion condemned by this court, has no other effect than to restore to the members of the party the power that would have been theirs if the lawmakers had been silent; and that qualifications thus established are as far aloof from the impact of constitutional restraint as those for membership in a golf club or for admission to a Masonic lodge.

Whether a political party in Texas has inherent power today without restraint by any law to determine its own membership, we are not required at this time either to affirm or to deny. The argument for the petitioner is that quite apart from the article in controversy, there are other provisions of the Election Law whereby the privilege of unfettered choice has been withdrawn or abridged (citing, *e. g.*, Articles 2955, 2975, 3100, 3104, 3105, 3110, 3121, Revised Civil Laws); that nomination

at a primary is in many circumstances required by the statute if nomination is to be made at all (Article 3101); that parties and their representatives have become the custodians of official power (Article 3105); and that if heed is to be given to the realities of political life, they are now agencies of the State, the instruments by which government becomes a living thing. In that view, so runs the argument, a party is still free to define for itself the political tenets of its members, but to those who profess its tenets there may be no denial of its privileges.

A narrower base will serve for our judgment in the cause at hand. Whether the effect of Texas legislation has been to work so complete a transformation of the concept of a political party as a voluntary association, we do not now decide. Nothing in this opinion is to be taken as carrying with it an intimation that the court is ready or unready to follow the petitioner so far. As to that, decision must be postponed until decision becomes necessary. Whatever our conclusion might be if the statute had remitted to the party the untrammeled power to prescribe the qualifications of its members, nothing of the kind was done. Instead, the statute lodged the power in a committee, which excluded the petitioner and others of his race, not by virtue of any authority delegated by the party, but by virtue of an authority originating or supposed to originate in the mandate of the law.

We recall at this point the wording of the statute invoked by the respondents. " Every political party in this State through its State Executive Committee shall have the power to prescribe the qualifications of its own members and shall in its own way determine who shall be qualified to vote or otherwise participate in such political party." Whatever inherent power a State political party has to determine the content of its membership resides in the State convention. Bryce, Modern Democracies, vol.

2, p. 40. There platforms of principles are announced and the tests of party allegiance made known to the world. What is true in that regard of parties generally, is true more particularly in Texas, where the statute is explicit in committing to the State convention the formulation of the party faith (Article 3139). The State Executive Committee, if it is the sovereign organ of the party, is not such by virtue of any powers inherent in its being. It is, as its name imports, a committee and nothing more, a committee to be chosen by the convention and to consist of a chairman and thirty-one members, one from each senatorial district of the State (Article 3139). To this committee the statute here in controversy has attempted to confide authority to determine of its own motion the requisites of party membership and in so doing to speak for the party as a whole. Never has the State convention made declaration of a will to bar Negroes of the State from admission to the party ranks. Counsel for the respondents so conceded upon the hearing in this court. Whatever power of exclusion has been exercised by the members of the committee has come to them, therefore, not as the delegates of the party, but as the delegates of the State. Indeed, adherence to the statute leads to the conclusion that a resolution once adopted by the committee must continue to be binding upon the judges of election though the party in convention may have sought to override it, unless the committee, yielding to the moral force of numbers, shall revoke its earlier action and obey the party will. Power so intrenched is statutory, not inherent. If the State had not conferred it, there would be hardly color of right to give a basis for its exercise.

Our conclusion in that regard is not affected by what was ruled by the Supreme Court of Texas in *Love* v. *Wilcox,* 119 Tex. 256; 28 S. W. (2d) 515, or by the Court of Civil Appeals in *White* v. *Lubbock,* 30 S. W. (2d) 722.

The ruling in the first case was directed to the validity of the provision whereby neither the party nor the committee is to be permitted to make former political affiliations the test of party regularity. There were general observations in the opinion as to the functions of parties and committees. They do not constitute the decision. The decision was merely this, that "the committee whether viewed as an agency of the State or as a mere agency of the party is not authorized to take any action which is forbidden by an express and valid statute." The ruling in the second case, which does not come from the highest court of the State, upholds the constitutionality of § 3107 as amended in 1927, and speaks of the exercise of the inherent powers of the party by the act of its proper officers. There is nothing to show, however, that the mind of the court was directed to the point that the members of a committee would not have been the proper officers to exercise the inherent powers of the party if the statute had not attempted to clothe them with that quality. The management of the affairs of a group already associated together as members of a party is obviously a very different function from that of determining who the members of the group shall be. If another view were to be accepted, a committee might rule out of the party a faction distasteful to itself, and exclude the very men who had helped to bring it into existence. In any event, the Supreme Court of Texas has not yet spoken on the subject with clearness or finality, and nothing in its pronouncements brings us to the belief that in the absence of a statute or other express grant it would recognize a mere committee as invested with all the powers of the party assembled in convention. Indeed, its latest decision dealing with any aspect of the statute here in controversy, a decision handed down on April 21, 1932 (*Love* v. *Buckner*, 49 S. W. (2d) 425), describes the statute as constituting " a grant of power " to the State Executive Com-

mittee to determine who shall participate in the primary elections.* What was questioned in that case was the validity of a pledge exacted from the voters that it was their *bona fide* purpose to support the party nominees. The court in upholding the exaction found a basis for its ruling in another article of the Civil Statutes (Art. 3167), in an article of the Penal Code (Art. 340), and in the inherent power of the committee to adopt regulations reasonably designed to give effect to the obligation assumed by an elector in the very act of voting. To clinch the argument the court then added that if all these sources of authority were inadequate, the legislature had made in Article 3107 an express " grant of power " to determine qualifications generally. There is no suggestion in the opinion that .the inherent power of the committee was broad enough (apart from legislation) to permit it to prescribe the extent of party membership, to say to a group of voters, ready as was the petitioner to take the statutory pledge, that one class should be eligible and another not. On the contrary, the whole opinion is instinct with the concession that pretensions so extraordinary must find their warrant in a statute. The most that can be said for the respondents is that the inherent powers of the Committee are still unsettled in the local courts. Nothing in the state of the decisions requires us to hold that they have been settled in a manner that would be subversive of the fundamental postulates of party organization. The suggestion is offered that in default of in-

---

* " We are bound to give effect to a grant of power to the State Executive Committee of a party to determine who shall participate in the acts of the party otherwise than by voting in a primary, when the Legislature grants the power in language too plain to admit of controversy, and when the determination of the Committee conflicts with no other statutory requirement or prohibition, especially when the Committee's determination makes effectual the public policy of the State as revealed in its statutes." *Love* v. *Buckner, supra.*

herent power or of statutory grant the committee may have been armed with the requisite authority by vote of the convention. Neither at our bar nor on the trial was the case presented on that theory. At every stage of the case the assumption has been made that authority, if there was any, was either the product of the statute or was inherent in the committee under the law of its creation.

We discover no significance, and surely no significance favorable to the respondents, in earlier acts of legislation whereby the power to prescribe additional qualifications was conferred on local committees in the several counties of the State. L. 1903, c. 101, § 94. The very fact that such legislation was thought necessary is a token that the committees were without inherent power. We do not impugn the competence of the legislature to designate the agencies whereby the party faith shall be declared and the party discipline enforced. The pith of the matter is simply this, that when those agencies are invested with an authority independent of the will of the association in whose name they undertake to speak, they become to that extent the organs of the State itself, the repositories of official power. They are then the governmental instruments whereby parties are organized and regulated to the end that government itself may be established or continued. What they do in that relation, they must do in submission to the mandates of equality and liberty that bind officials everywhere. They are not acting in matters of merely private concern like the directors or agents of business corporations. They are acting in matters of high public interest, matters intimately connected with the capacity of government to exercise its functions unbrokenly and smoothly. Whether in given circumstances parties or their committees are agencies of government within the Fourteenth or the Fifteenth Amendment is a question which this court will determine

for itself. It is not concluded upon such an inquiry by decisions rendered elsewhere. The test is not whether the members of the Executive Committee are the representatives of the State in the strict sense in which an agent is the representative of his principal. The test is whether they are to be classified as representatives of the State to such an extent and in such a sense that the great restraints of the Constitution set limits to their action.

With the problem thus laid bare and its essentials exposed to view, the case is seen to be ruled by *Nixon* v. *Herndon, supra.* Delegates of the State's power have discharged their official functions in such a way as to discriminate invidiously between white citizens and black. *Ex parte Virginia, supra; Buchanan* v. *Warley,* 245 U. S. 60, 77. The Fourteenth Amendment, adopted as it was with special solicitude for the equal protection of members of the Negro race, lays a duty upon the court to level by its judgment these barriers of color.

The judgment below is reversed and the cause remanded for further proceedings in conformity with this opinion. *Reversed.*

MR. JUSTICE MCREYNOLDS, dissenting.

March 15, 1929, petitioner here brought suit for damages in the United States District Court, Western Division of Texas, against Condon and Kolle, theretofore judges in a Democratic primary election. He claims they wrongfully deprived him of rights guaranteed by the Fourteenth and Fifteenth Amendments, Federal Constitution, by denying him the privilege of voting therein. Upon motion the trial court dismissed the petition, holding that it failed to state a cause of action; the Circuit Court of Appeals sustained this ruling. The matter is here by certiorari.

The original petition, or declaration, alleges—

L. A. Nixon, a negro citizen of the United States and of Texas duly registered and qualified to vote in Precinct

No. 9, El Paso County at the general election and a member of the Democratic party, was entitled to participate in the primary election held by that party July 28, 1928, for nominating candidates for State and other offices. He duly presented himself and sought to cast his ballot. Defendants, the judges, refused his request by reason of the following resolution theretofore adopted by the State Democratic Executive Committee—

" Resolved: That all white Democrats who are qualified and [*sic*] under the Constitution and laws of Texas and who subscribe to the statutory pledge provided in Article 3110, Revised Civil Statutes of Texas, and none other, be allowed to participate in the primary elections to be held July 28, 1928, and August 25, 1928, and further, that the Chairman and secretary of the State Democratic Executive Committee be directed to forward to each Democratic County Chairman in Texas a copy of this resolution for observance."

That, the quoted resolution " was adopted by the State Democratic Executive Committee of Texas under authority of the Act of the Legislature "—Ch. 67, approved June 7, 1927. Chapter 67 undertook to repeal former Article 3107,[1] Ch. 13, Rev. Civil Stat. 1925, which had been adopted in 1923, Ch. 32, § 1 (Article 3093a) and in lieu thereof to enact the following:

" Article 3107 (Ch. 67 Acts 1927). Every political party in this State through its State Executive Committee shall have the power to prescribe the qualifications of its own members and shall in its own way determine who shall be qualified to vote or otherwise participate in such political party; provided that no person shall ever be denied the right to participate in a primary in this State

---

[1] Original Art. 3107—Rev. Civ. Stats. 1925: " In no event shall a negro be eligible to participate in a Democratic party primary election held in the State of Texas, and should a negro vote in a Democratic primary election, such ballot shall be void and election officials shall not count the same."

because of former political views or affiliations or because of membership or non-membership in organizations other than the political party."

That, in 1923, prior to enactment of Chapter 67, the Legislature adopted Article 3093a,[2] Revised Civil Statutes, declaring that no negro should be eligible to participate in a Democratic party primary election. This was held invalid state action by *Nixon* v. *Herndon,* 273 U. S. 536.

That, when chapter 67 was adopted only the Democratic party held primary elections in Texas and the legislative purpose was thereby to prevent Nixon and other negroes from participating in such primaries.

That chapter 67 and the above quoted resolution of the Executive Committee are inoperative, null and void in so far as they exclude negroes from primaries. They conflict with the Fourteenth and Fifteenth Amendments to the Federal Constitution and laws of the United States.

That there are many thousand negro Democratic voters in Texas. The State is normally overwhelmingly Democratic and nomination by the primaries of that party is equivalent to an election. Practically there is no contest for State offices except amongst candidates for such nominations.

That the defendants' action in denying petitioner the right to vote was unlawful, deprived him of valuable political rights, and damaged him five thousand dollars. And for this sum he asks judgment.

---

[2] [Acts 2d C. S. 1923, p. 74] Article 3093a from Acts 1923. "All qualified voters under the laws and constitution of the State of Texas who are bona fide members of the Democratic party, shall be eligible to participate in any Democratic party primary election, provided such voter complies with all laws and rules governing party primary elections; however, in no event shall a negro be eligible to participate in a Democratic party primary election held in the State of Texas, and should a negro vote in a Democratic primary election, such ballot shall be void and election officials are herein directed to throw out such ballot and not count the same."

The trial court declared [p. 468]—

" The court here holds that the State Democratic Executive Committee of the State of Texas, at time of the passage of the resolution here complained of, was not a body corporate to which the Legislature of the State of Texas could delegate authority to legislate, and that the members of said Committee were not officials of the State of Texas, holding position as officers of the State of Texas, under oath, or drawing compensation from the State, and not acting as a state governmental agency, within the meaning of the law, but only as private individuals holding such position as members of said State Executive Committee by virtue of action taken upon the part of members of their respective political party; and this is also true as to defendants, they acting only as representatives of such political party, viz: the Democratic party, in connection with the holding of a Democratic primary election for the nomination of candidates on the ticket of the Democratic party to be voted on at the general election, and in refusing to permit plaintiff to vote at such Democratic primary election defendants were not acting for the State of Texas, or as a governmental agency of said State."

Also [p. 469] " that the members of a voluntary association, such as a political organization, members of the Democratic party in Texas, possess inherent power to prescribe qualifications regulating membership of such organization, or political party. That this is, and was, true without reference to the passage by the Legislature of the State of Texas of said Art. 3107, and is not affected by the passage of said act, and such inherent power remains and exists just as if said act had never been passed."

The Circuit Court of Appeals said [p. 1013]—

"The distinction between appellant's cases, the one under the 1923 statute and the other under the 1927 statute, is that he was denied permission to vote in the former by

state statute, and in the latter by resolution of the State Democratic Executive Committee. It is argued on behalf of appellant that this is a distinction without a difference, and that the State through its legislature attempted by the 1927 act to do indirectly what the Supreme Court had held it was powerless to accomplish directly by the 1923 act.

"We are of opinion, however, that there is a vast difference between the two statutes. The Fourteenth Amendment is expressly directed against prohibitions and restraints imposed by the States, and the Fifteenth protects the right to vote against denial or abridgment by any State or by the United States; neither operates against private individuals or voluntary associations. *United States* v. *Cruikshank,* 92 U. S. 542; *Virginia* v. *Rives,* 100 U. S. 313; *James* v. *Bowman,* 190 U. S. 127.

"A political party is a voluntary association, and as such has the inherent power to prescribe the qualifications of its members. The act of 1927 was not needed to confer such power; it merely recognized a power that already existed. *Waples* v. *Marrast,* 108 Tex. 5; 184 S. W. 180; *White* v. *Lubbock,* (Tex. Civ. App.) 30 S. W. (2d) 722; *Grigsby* v. *Harris,* 27 F. (2d) 942. It did not attempt as did the 1923 act to exclude any voter from membership in any political party. Precinct judges of election are appointed by party executive committees and are paid for their services out of funds that are raised by assessments upon candidates. Revised Civil Statutes of Texas, §§ 3104, 3108."

I think the judgment below is right and should be affirmed.

The argument for reversal is this—

The statute—Chapter 67, present Article 3107—declares that every political party through its State Executive Committee "shall have the power to prescribe the qualifications of its own members and shall in its own

way determine who shall be qualified to vote or otherwise participate in such political party." The result, it is said, is to constitute the Executive Committee an instrumentality of the State with power to take action, legislative in nature, concerning membership in the party. Accordingly, the attempt of the Democratic Committee to restrict voting in primaries to white people amounted to State action to that effect within the intendment of the Federal Constitution and was void under *Nixon* v. *Herndon, supra.*

This reasoning rests upon an erroneous view of the meaning and effect of the statute.

In *Nixon* v. *Herndon* the Legislature in terms forbade all negroes from participating in Democratic primaries. The exclusion was the direct result of the statute and this was declared invalid because in conflict with the Fourteenth Amendment.

The act now challenged withholds nothing from any negro; it makes no discrimination. It recognizes power in every political party, acting through its Executive Committee, to prescribe qualifications for membership, provided only that none shall be excluded on account of former political views or affiliations, or membership or non-membership in any non-political organization. The difference between the two pronouncements is not difficult to discover.

Nixon's present complaint rests upon the asserted invalidity of the resolution of the Executive Committee and, in order to prevail, he must demonstrate that it amounted to direct action by the State.

The plaintiff's petition does not attempt to show what powers the Democratic party had entrusted to its State Executive Committee. It says nothing of the duties of the Committee as a party organ; no allegation denies that under approved rules and resolutions, it may determine

and announce qualifications for party membership. We cannot lightly suppose that it undertook to act without authority from the party. Ordinarily, between conventions party executive committees have general authority to speak and act in respect of party matters. There is no allegation that the questioned resolution failed to express the party will. For present purposes the Committee's resolution must be accepted as the voice of the party.

Petitioner insists that the Committee's resolution was authorized by the State; the statute only recognizes party action and he may not now deny that the party had spoken. The exclusion resulted from party action and on that footing the cause must be dealt with. Petitioner has planted himself there. Whether the cause would be more substantial if differently stated, we need not inquire.

As early as 1895—Ch. 35, Acts 1895—the Texas Legislature undertook through penal statutes to prevent illegal voting in political primaries, also false returns, bribery, etc. And later, many, if not all, of the general safeguards designed to secure orderly conduct of regular elections were extended to party primaries.

By Acts of 1903 and 1905, and subsequent amendments, the Legislature directed that only official ballots should be used in all general elections. These are prepared, printed and distributed by public officials at public expense.

With adoption of the official ballot it became necessary to prescribe the methods for designating the candidates whose names might appear on such ballot. Three, or more, have been authorized. A party whose last candidate for governor received 100,000 votes must select its candidate through a primary election. Where a party candidate has received less than 100,000, and more than 10,000, votes it may designate candidates through convention or primary, as its Executive Committee may deter-

mine. A written petition by a specified number of voters may be used in behalf of an independent or nonpartisan candidate.

Some of the States have undertaken to convert the direct primary into a legally regulated election. In others, Texas included, the primary is conducted largely under party rules. Expenses are borne by the party; they are met chiefly from funds obtained by assessments upon candidates. A number of States (eleven perhaps) leave the determination of one's right to participate in a primary to the party, with or without certain minimum requirements stated by statute. In " Texas the party is free to·impose and enforce the qualifications it sees fit," subject to some definite restrictions. See Primary Elections, Merriam and Overacker, pp. 66, 72, 73.

A " primary election " within the meaning of the chapter of the Texas Rev. Civil Stat. relating to nominations "means an election held by the members of an organized political party for the purpose of nominating the candidates of such party to be voted for at a general or special election, or to nominate the county executive officers of a party." Article 3100; General Laws 1905, (1st C. S.) Ch. 11, § 102. The statutes of the State do not and never have undertaken to define *membership*—who shall be regarded as a *member*—in a political party. They have said that *membership* shall not be denied to certain specified persons; otherwise, the matter has been left with the party organization.

Since 1903 (Acts 1903, Ch. CI., § 94,[3] p. 150, 28th Leg.; Acts 1905, Ch. 11, § 103, p. 543, 29th Leg.) the statutes of Texas have recognized the power of party executive committees to define the qualifications for membership. The Act of 1923, Ch. 32, § 1, (Art. 3093a) and the Act

---

[3]Acts 1903, Ch. CI. " Sec. 94. . . . provided, that the county executive committee of the party holding any primary election may prescribe additional qualifications necessary to participate therein."

of 1927, Ch. 67, §1, (Art. 3107) recognize the authority of the party through the Executive Committee, or otherwise, to specify such qualifications throughout the State. See *Love* v. *Wilcox*, 119 Tex. 256; 28 S. W. (2d) 515, 523.

These Acts, and amendments, also recognize the right of State and County Executive Committees generally to speak and act for the party concerning primaries. These committees appoint the necessary officials, provide supplies, canvass the votes, collect assessments, certify the successful candidates, pay expenses and do whatever is required for the orderly conduct of the primaries. Their members are not State officials; they are chosen by those who compose the party; they receive nothing from the State.

By the amendment of 1923 the Legislature undertook to declare that " all qualified voters under the laws and constitution of the State of Texas who are bona fide members of the Democratic party, shall be eligible to participate in any Democratic party primary election, provided such voter complies with all laws and rules governing party primary elections; however, in no event shall a negro be eligible to participate in a Democratic party primary election held in the State of Texas." *Love* v. *Wilcox, supra,* 274; 523. This enactment, held inoperative by *Nixon* v. *Herndon, supra,* (1927) was promptly repealed.

The courts of Texas have spoken concerning the nature of political primary elections and their relationship to the State. And as our present concern is with parties and legislation of that State, we turn to them for enlightenment rather than to general observations by popular writers on public affairs.

In *Waples* v. *Marrast,* 108 Texas 5, 11, 12; 184 S. W. 180, decided in 1916, the Supreme Court declared—

"A political party is nothing more or less than a body of men associated for the purpose of furnishing and main-

taining the prevalence of certain political principles or be-
liefs in the public policies of the government. As rivals
for popular favor they strive at the general elections for
the control of the agencies of the government as the means
of providing a course for the government in accord with
their political principles and the administration of those
agencies by their own adherents. According to the sound-
ness of their principles and the wisdom of their policies
they serve a great purpose in the life of a government.
But the fact remains that the objects of political organi-
zations are intimate to those who compose them. They
do not concern the general public. They directly interest,
both in their conduct and in their success, only so much
of the public as are [sic] comprised in their membership,
and then only as members of the particular organization.
They perform no governmental function. They consti-
tute no governmental agency. The purpose of their pri-
mary elections is merely to enable them to furnish their
nominees as candidates for the popular suffrage. In the
interest of fair methods and a fair expression by their
members of their preference in the selection of their nomi-
nees, the State may regulate such elections by proper
laws, as it has done in our general primary law, and as
it was competent for the Legislature to do by a proper
act of the character of the one here under review. But
the payment of the expenses of purely party elections is
a different matter. On principle, such expenses can not
be differentiated from any other character of expense in-
curred in carrying out a party object, since the attainment
of a party purpose—the election of its nominees at the
general elections through the unified vote of the party
membership—is necessarily the prime object of a party
primary. . . .

  " To provide nominees of political parties for the
people to vote upon in the general elections, is not the

business of the State. It is not the business of the State because in the conduct of the government the State knows no parties and can know none. If it is not the business of the State to see that such nominations are made, as it clearly is not, the public revenues can not be employed in that connection. To furnish their nominees as claimants for the popular favor in the general elections is a matter which concerns alone those parties that desire to make such nominations. It is alone their concern because they alone are interested in the success of their nominees. The State, as a government, can not afford to concern itself in the success of the nominees of any political party, or in the elective offices of the people being filled only by those who are the nominees of some political party. Political parties are political instrumentalities. They are in no sense governmental instrumentalities. The responsible duties of the State to all the people are to be performed and its high objects effected without reference to parties, and they have no part or place in the exercise by the State of its great province in governing the people."

*Koy* v. *Schneider,* 110 Texas, 369, 376, 218 S. W. 479; 221 S. W. 880 (April 21, 1920)—" The Act of the Legislature deals only with suffrage within the party primary or convention, which is but an instrumentality of a group of individuals for the accomplishment of party ends." And see *id.* pp. 394 *et seq.*

*Cunningham* v. *McDermett,* 277 S. W. 218, (Court of Civil Appeals, Oct. 22, 1925)—"Appellant contends that the Legislature by prescribing how party primaries must be conducted, turned the party into a governmental agency, and that a candidate of a primary, being the candidate of the governmental agency, should be protected from the machinations of evilly disposed persons.

" With this proposition we cannot agree, but consider them as they were held to be by our Supreme Court in

the case of *Waples* v. *Marrast,* 108 Tex. 5, 184 S. W. 180, L. R. A. 1917A, 253, in which Chief Justice Phillips said: ' Political parties are political instrumentalities. They are in no sense governmental instrumentalities.' "

*Briscoe* v. *Boyle,* 286 S. W. 275, 276 (Court Civil Appeals, July 2, 1926)—This case was decided by an inferior court while the Act of 1923, Ch. 32, § 1, amending Art. 3093, was thought to be in force—before *Nixon* v. *Herndon, supra,* ruled otherwise. It must be read with that fact in mind. Among other things, the court said—" In fine, the Legislature has in minute detail laid out the process by which political parties shall operate the statute-made machinery for making party nominations, and has so hedged this machinery with statutory regulations and restrictions as to deprive the parties and their managers of all discretion in the manipulation of that machinery."

*Love* v. *Wilcox, supra,* 272, (Sup. Ct., May 17, 1930)— " We are not called upon to determine whether a political party has power, beyond statutory control, to prescribe what persons shall participate as voters or candidates in its conventions or primaries. We have no such state of facts before us. The respondents claim that the State Committee has this power by virtue of its general authority to manage the affairs of the party. The statute, article 3107, Complete Tex. St. 1928 (Vernon's Ann. Civ. St. art. 3107), recognizes this general authority of the State Committee, but places a limitation on the discretionary power which may be conferred on that committee by the party by declaring that, though the party through its State Executive Committee, shall have the power to prescribe the qualifications of its own members, and to determine who shall be qualified to vote and otherwise participate, yet the committee shall not exclude anyone from participation in the party primaries because of former political views or affiliations, or because of member-

ship or non-membership in organizations other than the political party. The committee's discretionary power is further restricted by the statute directing that a single, uniform pledge be required of the primary participants. The effect of the statutes is to decline to give recognition to the lodgment of power in a State Executive Committee, to be exercised at its discretion. The statutes have recognized the right of the party to create an Executive Committee as an agency of the party, and have recognized the right of the party to confer upon that committee certain discretionary powers, but have declined to recognize the right to confer upon the committee the discretionary power to exclude from participation in the party's affairs any one because of former political views or affiliations, or because of refusal to take any other than the statutory pledge. It is obvious, we think, that the party itself never intended to confer upon its Executive Committee any such discretionary power. The party when it selected its State Committee did so with full knowledge of the statutory limitations on that committee's authority, and must be held to have selected the committee with the intent that it would act within the powers conferred, and within the limitations declared by the statute. Hence, the committee, whether viewed as an agency of the state or as a mere agency of the party, is not authorized to take any action which is forbidden by an express and valid statute."

*Love* v. *Buckner*, 49 S. W. (2d) 425, (Sup. Ct., Texas, April 21, 1932).

The Court of Civil Appeals certified to the Supreme Court for determination the question—" Whether the Democratic State Executive Committee had lawful authority to require otherwise lawfully qualified and eligible Democratic voters to take the pledge specified in the resolution adopted by the Committee at its meeting in March," 1932.

The resolution directed that no person should be permitted to participate in any precinct or county Democratic convention held for the purpose of selecting delegates to the State convention at which delegates to the National Democratic Convention are selected unless such person shall take a written pledge to support the nominees for President and Vice-President.

" The Court answers that the Executive Committee was authorized to require the voters to take the specified pledge."

It said—

" The Committee's power to require a pledge is contested on the ground that the Committee possesses no authority over the conventions of its party not granted by statute, and that the statutes of Texas do not grant, but negative, the Committee's power to exact such a pledge.

" We do not think it consistent with the history and usages of parties in this State nor with the course of our legislation to regard the respective parties or the state executive committees as denied all power over the party membership, conventions, and primaries save where such power may be found to have been expressly delegated by statute. On the contrary, the statutes recognize party organizations including the state committees, as the repositories of party power, which the Legislature has sought to control or regulate only so far as was deemed necessary for important governmental ends, such as purity of the ballot and integrity in the ascertainment and fulfillment of the party will as declared by its membership.

" Without either statutory sanction or prohibition, the party must have the right to adopt reasonable regulations for the enforcement of such obligations to the party from its members as necessarily arise from the nature and purpose of party government. . . .

" We are forced to conclude that it would not be beyond the power of the party through a customary agency such as its state executive committee to adopt regulations designed merely to enforce an obligation arising from the very act of a voter in participating in party control and party action, though the statutes were silent on the subject. . . .

" The decision in *Love* v. *Wilcox,* 119 Tex. 256, gave effect to the legislative intent by vacating action of the State Committee violative of express and valid statutes. Our answer to the certified question likewise gives effect to the legislative intent in upholding action of the State Committee in entire accord with the governing statutes as well as with party custom."

The reasoning advanced by the court to support its conclusion indicates some inadvertence or possibly confusion. The difference between statutes which recognize and those which confer power is not always remarked, *e. g.,* " With regard to the state committee's power to exact this pledge the statutes are by no means silent. The statutes do not deny the power but plainly recognize and confer same." But the decision itself is a clear affirmation of the general powers of the State Executive Committee under party custom to speak for the party and especially to prescribe the prerequisites for membership and for " voters of said political party " in the absence of statutory inhibition. The point actually ruled is inconsistent with the notion that the Executive Committee does not speak for the organization; also inconsistent with the view that the Committee's powers derive from State statutes.

If statutory recognition of the authority of a political party through its Executive Committee to determine who shall participate therein gives to the resolves of such party or committee the character and effect of action by the State, of course the same rule must apply when party

conventions are so treated; and it would be difficult logically to deny like effect to the rules and by-laws of social or business clubs, corporations, and religious associations, etc., organized under charters or general enactments. The State acts through duly qualified officers and not through the representatives of mere voluntary associations.

Such authority as the State of Texas has to legislate concerning party primaries is derived in part from her duty to secure order, prevent fraud, etc., and in part from obligation to prescribe appropriate methods for selecting candidates whose names shall appear upon the official ballots used at regular elections.

Political parties are fruits of voluntary action. Where there is no unlawful purpose, citizens may create them at will and limit their membership as seems wise. The State may not interfere. White men may organize; blacks may do likewise. A woman's party may exclude males. This much is essential to free government.

If any political party as such desires to avail itself of the privilege of designating candidates whose names shall be placed on official ballots by the State it must yield to reasonable conditions precedent laid down by the statutes. But its general powers are not derived from the State and proper restrictions or recognition of powers cannot become grants.

It must be inferred from the provisions in her statutes and from the opinions of her courts that the State of Texas has intended to leave political parties free to determine who shall be admitted to membership and privileges, provided that none shall be excluded for reasons which are definitely stated and that the prescribed rules in respect of primaries shall be observed in order to secure official recognition of nominees therein for entry upon the ballots intended for use at general elections.

By the enactment now questioned the Legislature refrained from interference with the essential liberty of party associations and recognized their general power to define membership therein.

The words of the statute disclose such purpose and the circumstances attending its passage add emphasis. The Act of 1923 had *forbidden* negroes to participate in Democratic primaries. *Nixon* v. *Herndon* (March, 1927) *supra,* held the inhibition invalid. Shortly thereafter (June, 1927) the Legislature repealed it and adopted the Article now numbered 3107 (Rev. Stats. 1928) and here under consideration. The fair conclusion is, that accepting our ruling as conclusive the lawmakers intended expressly to rescind action adjudged beyond their powers and then clearly to announce recognition of the general right of political parties to prescribe qualifications for membership. The contrary view disregards the words, that " every political *party* . . . shall in its own way determine who shall be qualified to vote or otherwise participate in such political party "; and really imputes to the Legislature an attempt indirectly to circumvent the judgment of this Court. We should repel this gratuitous imputation; it is vindicated by no significant fact.

The notion that the statute converts the Executive Committee into an agency of the State also lacks support. The language employed clearly imports that the political party, not the State, may act through the Committee. As shown above, since the Act of 1903 the Texas laws have recognized the authority of Executive Committees to announce the party will touching membership.

And if to the considerations already stated there be added the rule announced over and over again that, when possible, statutes must be so construed as to avoid unconstitutionality, there can remain no substantial reason for upsetting the Legislature's laudable effort to retreat from

an untenable position by repealing the earlier act, and then declare the existence of party control over membership therein to the end that there might be orderly conduct of party affairs, including primary elections.

The resolution of the Executive Committee was the voice of the party and took from appellant no right guaranteed by the Federal Constitution or laws. It was incumbent upon the judges of the primary to obey valid orders from the Executive Committee. They inflicted no wrong upon Nixon.

A judgment of affirmance should be entered.

I am authorized to say that MR. JUSTICE VAN DEVANTER, MR. JUSTICE SUTHERLAND and MR. JUSTICE BUTLER concur in this opinion.