**Paul T. WIGODA, individually and on behalf of all other duly elected, challenged and uncommitted delegates and alternates to the 1972 Democratic National Convention from the 1st, 2nd, 3rd, 5th, 7th, 8th, 9th and 11th Illinois Congressional Districts similarly situated, Plaintiffs,**

v.

**William COUSINS et al., Defendants.**

**No. 72 C 1001.**

United States District Court,
N. D. Illinois, E. D.
May 17, 1972.

Jerome H. Torshen, Chicago, Ill., for plaintiffs.

John R. Schmidt, Steven Franklin Schwab, Wayne W. Whalen, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

Plaintiff originally brought this action in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, seeking 1) to have himself and others similarly situated declared duly elected delegates and alternates to the 1972 Democratic National Convention (the "Convention") in accordance with Illinois law and therefore entitled to take their seats at the Convention; and 2) to enjoin the defendants from taking any action that would interfere with plaintiff's functioning as delegates and alternates to the Convention. Defendants removed the case to this Court pursuant to 28 U.S.C. § 1446, alleging that the case was properly removable to a Federal Court under 28 U.S.C. §§ 1441 and 1443. Plaintiff then moved to have the case remanded back to the State Court pursuant to 28 U.S.C. § 1447(c) on the ground that this Court lacks jurisdiction over the subject matter of the dispute. Inasmuch as we find that there is no basis for federal jurisdiction over the subject matter of this dispute, we grant plaintiff's motion and remand the case to the Circuit Court of Cook County.

Before proceeding with an examination of the possible jurisdictional bases for this cause of action, a more detailed statement of the relevant facts is necessary. In a primary election held in Illinois on March 21, 1972, plaintiff and the class he purports to represent (the "uncommitted delegation") were elected as "uncommitted" delegates and alternates to the Convention. That they were elected in accordance with the provisions of the Illinois Election Code relating to the selection of delegates to a national convention of a political party, Ill.Rev. Stat. ch. 46 §§ 7–14 and 7–14.1, is not disputed. On March 31, the defendants filed with the Acting Chairman of the Credentials Committee of the 1972 Democratic National Convention (the "Credentials Committee") a "Notice of Intent to Challenge" the seating of the members of the plaintiff class as delegates and alternates to the Convention.

Thereafter, the defendants additionally filed a "Statement of Grounds of Challenge Against the Proposed 'Uncommitted' Delegates to the 1972 Democratic National Convention from the Districts Encompassing the City of Chicago" in which they alleged that the members of the plaintiff class were selected in violation of the Rules adopted by the Democratic National Committee and incorporated into the Call of the 1972 Democratic National Convention which set forth standards and qualifications to be met in the selection of delegates from each of the states to the Convention (the so-called "McGovern Rules"). Specifically, the defendants contend that "[b]lacks, Latin Americans, women and young people are grossly underrepresented on the Proposed Delegation and in all Chicago party affairs" and that "the Proposed Delegation was slated, endorsed, and supported by the party organization without open slate-making procedures, without published rules and by party officials chosen prior to 1972."

On April 19, plaintiff filed a civil action in the Circuit Court of Cook County, County Department, Chancery Division, asking the court: 1) to declare plaintiff a proper class representative of the "uncommitted" delegates and alternates to the Convention; 2) to declare

all members of the plaintiff class to be duly elected delegates and alternates in accordance with Illinois law and therefore entitled to take their seats as such at the Convention; 3) to enjoin the defendants from taking any action which would interfere with members of the plaintiff class functioning as delegates and alternates (e. g., pursuing their challenge with the Credentials Committee); and 4) to grant any other appropriate relief. On April 20, defendants filed a petition for removal of that action to this Court pursuant to 28 U.S.C. § 1446. On April 21, plaintiff filed a motion for preliminary injunction in the Circuit Court of Cook County which became dormant due to the removal of the case to this Court.

On April 24, plaintiff moved to have the case remanded to the state court pursuant to 28 U.S.C. § 1447 on the ground that this Court lacks jurisdiction over the case. In addition, plaintiff moved for an order temporarily restraining defendants from proceeding with their challenge to the Credentials Committee. Both motions were taken under advisement pending a determination whether we have jurisdiction. On May 2, plaintiff submitted a motion for a preliminary injunction enjoining defendants from proceeding before the Credentials Committee.

After discussion with plaintiff's counsel in open court, the Court ruled on the question of enjoining defendants pending a determination of the jurisdictional question. The motion for a preliminary injunction and the motion for a temporary restraining order were denied on May 2, inasmuch as there had been no showing of immediate and irreparable harm as required by Rule 65(b), Féd.R. Civ.P., and because the underlying claim for relief in the case—an order enjoining the defendants from exercising their First Amendment rights within procedures set up by a national political party—raises substantial constitutional questions which ought not be resolved on a motion for a temporary restraining

order or preliminary injunction but only after a full hearing on the merits.

Given that background of the case, it must now be determined whether this Court has jurisdiction over the subject matter of the dispute. In their petition for remand, defendants have asserted two statutory bases for removal jurisdiction—28 U.S.C. §§ 1441 and 1443—each of which will be discussed separately.

## I. SECTION 1441

In essence, section 1441 provides that removal is permissible if the federal court to which the action is being removed would have had jurisdiction over the subject mater and parties if the action had originally been brought in that federal court. Inasmuch as the. parties to the instant action are all citizens of Illinois, in order for removal to be proper under § 1441, the action must have been maintainable, if brought here originally, under federal question jurisdiction, 28 U.S.C. § 1331, i. e., the matter in controversy must exceed $10,000 in value and arise under the Constitution, laws, or treaties of the United States.

The defendants have proffered several bases for federal question jurisdiction, asserting that the controversy arises under the Constitution of the United States—Article II § 1, 1st Amendment, 14th Amendment, and 15th Amendment. It is important to note initially that any basis for federal jurisdiction must stem solely from the allegations of the complaint. Great Northern Ry. Co. v. Galbreath Cattle Co., 271 U.S. 99, 46 S.Ct. 439, 70 L.Ed. 854 (1926); Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Crow v. Wyoming Timber Products Co., 424 F.2d 93 (10th Cir. 1970). See also, Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). The defendants' primary argument is that, since the case involves a controversy connected with the election of the President of the United States, albeit several steps removed from the

formal selection of the President by the Electoral College pursuant to Article II § 1, as amended, it arises under the Constitution. They argue that the request in the complaint that the court declare that the uncommitted delegation is entitled to sit as such at the Convention raises the question whether the selection of this uncommitted delegation in accordance with Illinois election laws constitutes a bar to a challenge under the rules of the National Democratic Party and that this question can only be decided under the Federal Constitution.

No case has been cited in support of this argument apparently because it is a question of first impression. We hold that the eligibility of delegates to a national party convention is not within the scope of Article II § 1, as amended by the 12th Amendment. To conclude otherwise would be to open the federal courts to a wide variety of controversies, for, under the same .logic, almost any controversy can somehow be related to a general provision in the Constitution. The mere fact that this controversy centers around a preliminary process pertaining to the selection of the President without more does not confer jurisdiction over that controversy upon the federal courts.

■ This is not to suggest that the qualifications and eligibility of delegates to national political party conventions is properly determinable by state law or by state courts. If it were, each of the fifty states could establish the qualifications of its delegates to the various party conventions without regard to party policy, an obviously intolerable result. The proper forum for determination of the eligibility of delegates to serve at such a convention is the Credentials Committee of the party or the convention. This is clearly a question of political party policy which is not justiciable, if at all, unless and until the Credentials Committee acts and then only if its actions violate fundamental constitutional rights.

■ The state election laws are applicable only to the extent that they regulate the manner of selection of delegates and are not applicable to their qualifications or eligibility to serve.

■ The several other grounds asserted by the defendants cannot support federal jurisdiction in the instant case since they can arise in the lawsuit only by way of defense and not from the complaint. See, Great Northern Ry. Co. v. Galbreath Cattle Co., and related cases cited supra. Undoubtedly, the issue of whether an order can be entered enjoining the defendants from pursuing what is seemingly a legitimate challenge to the Illinois delegation before the Credentials Committee without clearly violating defendants' 1st Amendment rights, as protected through the due process clause of the 14th Amendment against state interference, involves a federal question. Given the complaint in this case, however, that issue can only be raised by way of defense. Likewise, the underlying issues of whether certain allegedly underrepresented classes of people are being deprived of the equal protection of the laws and of protected voting rights can only be raised by way of defense.

■ We have considered other possible sources of federal jurisdiction and found them also lacking. First, the question of the relative supremacy of the rules of a national political party vis-a-vis state law, which was alluded to in defendants' memorandum in support of its petition for removal, cannot support federal jurisdiction in the instant case. An alleged conflict between state law and the rules of a national political party is not tantamount to a conflict between state law and federal law. To hold that the complaint in this case necessarily involve the Supremacy clause of the Constitution, i. e., Article VI, would require a holding that the rules adopted by a political party are the equivalent of statutes passed by the Congress. Again, this is not to say that state law predominates over national party rules where they conflict. On the contrary,

any attempt by an individual state to control a national convention of a party will necessarily fail due to the limits of its own jurisdiction.

The Texas White Primary Cases— Nixon v. Condon, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932); Smith v. All-wright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944); Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953)—all involved federal courts asserting federal question jurisdiction over the state primary elections of local political parties. However, the complaints in those cases alleged racial discrimination in violation of the 14th and 15th Amendments which provided the federal jurisdiction. The Reapportionment cases, Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) together with its predecessors and progeny, all involved allegations in the complaints of denials of equal protection or due process. No such allegations as in these two groups of cases are present in the instant complaint. Nor are there federal statutes which even tangentially could be applicable to the instant fact pattern. In addition, neither of the recent constitutional amendments forbidding the imposition of a poll tax and providing for the 18 year old vote, both of which are applicable to primary elections, arise in this case by virtue of the complaint.

Accordingly, we find that § 1441 affords no basis for federal jurisdiction over the instant case for purposes of removal.

## II. SECTION 1443

There are two possible bases for removal under this section.

■ 1. *Subsection 1443(1).* This provision allows for removal of any civil or criminal action "against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens. . . ." This has been construed to mean that removal is allowed under this subsection only when it can be clearly predicted by operation of a pervasive and explicit law or pattern that federal rights will inevitably be denied by the very act of going to trial in the state court. Greenwood v. Peacock, 384 U.S. 808, 824, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966). Inasmuch as there has been no allegation that the defendants cannot raise their constitutional defenses and claims in the state court, and since it is clear that no constitutional deprivation will arise by merely defending the state action, removal is not proper under this subsection.

■ 2. *Subsection 1443(2).* This provision allows for removal of any civil or criminal action "for any act under color or of authority derived from any law providing for equal rights. . . ." In order for removal to be proper under this subsection, the defendants must have done some act about which they are about to be sued, that act must have been under color of authority of any federal law providing for equal rights, and the defendants must have been federal officers performing their duties under the above mentioned law. Greenwood v. Peacock, *supra.* In the instant case, there is no question that the defendants are being sued for an act which they have done and currently are doing—the presentation of a challenge to the uncommitted delegation to the Credentials Committee. With respect to the second requirement, defendants argue that it has been fulfilled since they are enforcing the Mc-Govern Rules which do indeed deal with equal rights by providing for a more equal representation of the citizenry within the Democratic Party. Clearly, however, the McGovern Rules are not federal law, as has been discussed above. Moreover, the defendants are not federal officers. Their argument that by enforcing the McGovern Rules they are performing the essential duties of federal officers and therefore *are* federal officers hinges on the characterization of those rules as federal law. Inasmuch as such a characterization cannot be made, the defendants cannot be characterized as federal officers. Since the defendants are not federal officers enforc-

ing federal law, removal is not proper under § 1443(2).

In brief summary, plaintiff's motion to remand the case to the Circuit Court of Cook County must be granted since there is no jurisdictional basis for this federal court to hear it. However, to say that this controversy in its present posture cannot be litigated and resolved in the federal court does not, as previously indicated, imply that it must, will, or can properly be resolved in the state court. That court faces serious jurisdictional difficulties as well and, even if those initial barriers are overcome, it is difficult to imagine any thoughtful court granting the type of relief requested in the instant case.

An appropriate order consistent with the foregoing will enter.